Filed 1/21/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HUGO JOSEPH CAMP,<br><br>    Defendant and Respondent. | D064737<br><br><br>(Super. Ct. No. SCE327615) |

APPEAL from an order of the Superior Court of San Diego County, Charles W. Ervin, Judge.  Affirmed.

Bonnie M. Dumanis, San Diego District Attorney, Laura E. Tanney, Linh Lam, and Lilia Encisco Garcia, Deputy District Attorneys, for Plaintiff and Appellant.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Respondent.

I.

INTRODUCTION

After Hugo Joseph Camp entered into a plea agreement with the People, the trial court imposed a stipulated split sentence[1] of 28 months, with 14 months to be served in local custody and 14 months under mandatory supervision.  In preparing for Camp's release from custody, the probation officer filed a report indicating that the officer had recently learned that Camp was ineligible for mandatory supervision because he was subject to an immigration hold and would be deported upon his release from custody.  At a hearing to consider this issue, defense counsel requested that the court terminate the mandatory supervision portion of Camp's sentence and permit him to be deported.  The trial court agreed, terminated the mandatory supervision portion of Camp's sentence, and ordered Camp released to an immigration enforcement agent.

On appeal, the People contend that the trial court exceeded its jurisdiction in terminating the mandatory supervision portion of Camp's split sentence.  The People maintain that the court's only options were to order Camp to serve the remainder of the 28-month sentence in custody, or permit him to withdraw his guilty plea.  We affirm the trial court's order.

---

1    A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department.  Such sentences are imposed pursuant to Penal Code section 1170, subdivision (h)(5)(B)(i), a provision originally adopted as part of the "2011 Realignment Legislation addressing public safety."  (Criminal Justice Realignment Act of 2011 (Realignment Act), operative Oct. 1, 2011.)  (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1.)

2

II.

FACTUAL AND PROCEDURAL BACKGROUND

The People charged Camp with robbery (Pen. Code, § 211)[2] (count 1), burglary (§ 459) (count 2), petty theft (§ 484) (count 3), and resisting an officer (§ 148, subd. (a)(1)) (count 4).  As to the petty theft charge (§ 484) (count 3), the People alleged that Camp had suffered three prior theft convictions.  The People also alleged that Camp had suffered four prison priors (§§ 667.5, subd. (b), 668).

One week later, the People and Camp entered into a plea agreement. The plea agreement stated that Camp would plead guilty to grand theft from a person (§ 487, subd. (c)),[3] and resisting an officer (§ 148, subd. (a)(1)) (count 4) and would admit having incurred one prison prior (§§ 667.5, subd. (b), 668).  The agreement further stated that the People would dismiss the balance of the charges and that Camp would be sentenced to a stipulated split sentence (§ 1170, subd. (h)(5)(B)(i))[4] of 28 months, with 14 months to be

---

[2]    All subsequent statutory references are to the Penal Code, unless otherwise specified.

[3]    The plea agreement indicated that the charge of grand theft of a person (§ 487, subd. (c)) was count 5 of an amended complaint.  Although no amended complaint is in the record, a minute order indicates that the complaint was amended by interlineation to allege a charge of grand theft of a person (§ 487, subd. (c)) (count 5).

[4]    All citations to section 1170, subdivision (h)(5)(B) are to a version of section 1170 that was in effect both at the time the trial court sentenced Camp, and at the time the trial court terminated his mandatory supervision.  (Amended by Stats. 2012, ch. 828, § 1.)

served in local custody and 14 months under mandatory supervision.[5] That same day, the trial court held a change of plea hearing and accepted Camp's plea of guilty.

The court sentenced Camp as follows:

> "Pursuant to the agreement in this case it is the judgment and sentence of this court that this defendant be committed to the custody of the sheriff pursuant to [section] 1170, [subdivision] (H)(5)(B), which is local prison, to serve the term stipulated to be 28 months. [¶] . . . After the first 14 months he serves actually in custody, the latter portion will be suspended and served in the community under the supervision of the probation department."

In preparation for Camp's release from the sheriff's custody to mandatory supervision, the probation officer filed a report indicating that an agent of Immigration and Customs Enforcement (ICE) had informed the probation officer that Camp was in the United States illegally, and that he would be "deported to South Africa." The report further stated that Camp would be "released from the Sheriff's custody directly to ICE custody." The report then states the following:

> "[The deportation] will make the offender unavailable for mandatory supervision. Therefore it is recommended that he serve the remainder of his term in the custody of the Sheriff's Department without release to the community. If this is not possible, due to the stipulated plea agreement, it is recommended that the case be sent back to the sentencing court for a change of plea to address this development."

The trial court held a hearing concerning the issue raised in the supplemental probation report. At the hearing, defense counsel requested that the court "terminate the

---

5    The plea agreement described the stipulated sentence as follows, "stipulated 28 months local prison split sentence[,] 14 [months] / 14 months."

4

mandatory supervision," in light of the fact that Camp was going to be released to ICE's custody and then deported. The court asked the prosecutor for the People's position. The prosecutor stated, "The People would, at least, like to see [Camp] serve his custodial commit and then we would submit on the court's discretion after that." The court then asked the probation officer for his department's position. The officer stated, "Nothing further other than it doesn't sound like he'll be eligible for mandatory supervision if he's being deported."

After the parties submitted the matter to the court, the court terminated Camp's mandatory supervision and modified his sentence, stating:

> "Probation is terminated and denied.[6] He is to serve 364 days in jail with credit for 364, 182, 182 good time/work time credits on top of the actual. [¶] He can go back to wherever they are going to deport him to. ICE has a hold of him now. The court finds good cause to modify the previously agreed upon sentencing structure in this case."

The People timely appealed the trial court's order terminating Camp's mandatory supervision and modifying his sentence.[7]

---

6 Although the court referred to "probation" it is clear the court was terminating Camp's "mandatory supervision." (§ 1170, subd. (h)(5)(B)(i).)

7 The trial court's order terminating Camp's mandatory supervision and modifying his sentence is appealable as "[a]n order made after judgment, affecting the substantial rights of the people." (§ 1238, subd. (a)(5).) Camp does not contend otherwise.
Camp does contend that the fact that he has been deported to South Africa renders the People's appeal moot. However, Camp advances no authority in support of this contention. Further, Camp has not established that the trial court's order terminating mandatory supervision will have no possible effect in the future. (See, e.g., *People v.*

## III.

## DISCUSSION

*The trial court did not act in excess of its jurisdiction in terminating Camp's mandatory supervision and modifying his sentence*

The People claim that the trial court acted in "excess of its jurisdiction by releasing Camp from the remaining 14 months of his suspended sentence when he became ineligible for mandatory supervision." The People argue that the trial court's act in terminating Camp's mandatory supervision, without placing him in custody for the remainder of his suspended sentence, resulted in an "unauthorized sentence" that "must be vacated."[8] The People's contention presents a pure question of law, which requires us to interpret the statutes governing mandatory supervision. Accordingly, we apply the de novo standard of review. (See e.g., *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 ["We

---

*Puluc–Sique* (2010) 182 Cal.App.4th 894, 900 [defendant's appeal challenging conditions of probation is not moot because the resolution of the appeal "could affect defendant's rights should he return to this country in the future"].) In addition, we are not persuaded by Camp's suggestion that the People's appeal is moot because "his period of mandatory supervision has been terminated, and therefore the court no longer retains jurisdiction over him." The propriety of the trial court's termination of Camp's mandatory supervision is the *subject* of this appeal. Thus, the fact that the trial court terminated Camp's mandatory supervision is not a basis for concluding that the People's appeal is moot.

[8]     We may review the People's claim that the trial court imposed an unauthorized sentence notwithstanding their failure to raise the claim in the trial court. (See *People v. Anderson* (2010) 50 Cal.4th 19, 26 [party may raise claim that a trial court imposed an "unauthorized sentence or a sentence entered in excess of jurisdiction," without asserting claim in trial court].)

6

apply the de novo standard of review to this claim, since the claim raises an issue of statutory interpretation"].)

A.    *Governing law*

1.    *General principles of statutory interpretation*

In *Doe v. Brown, supra,* 177 Cal.App.4th at page 417, this court outlined the following well-established principles of statutory interpretation:

> " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' "

2.    *Split sentences under the Realignment Act*

"Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison. [Citation.] Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision." (*People v. Catalan* (2014) 228 Cal.App.4th 173, 178.)

At the time of Camp's sentencing, section 1170, subdivision (h)(5)(B) permitted a trial court to sentence a defendant to a split sentence as follows:

7

"(B)(i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. *The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3.* During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court. Any time period which is suspended because a person has absconded shall not be credited toward the period of supervision.

"(ii) The portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision . . . ." (Italics added.)

3. *Provisions governing the revocation and modification of mandatory supervision*

As indicated by the second italicized sentence in section 1170, subdivision (h)(5)(B)(i), quoted *ante*, proceedings to revoke or modify mandatory supervision are conducted pursuant to either section 1203.2, subdivisions (a) or (b) or section 1203.3.

Section 1203.2, subdivisions (a) and (b) authorize a trial court to revoke, modify, or terminate the supervision of a defendant subject to mandatory supervision as follows:

"(a) At any time during the period of supervision of a person . . . (3) placed on mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170, . . . if any probation officer . . . has probable cause to believe that the supervised person is violating any term or condition of his or her

8

supervision, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the supervised person and bring him or her before the court or the court may, in its discretion, issue a warrant for his or her rearrest. Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision . . . .

"(b)(1) Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person pursuant to this subdivision, except that the court shall not terminate parole pursuant to this section. . . . "

Section 1203.3 also permits a court to revoke, modify, or change the supervision of a defendant subject to mandatory supervision.[9] Section 1203.3, subdivision (a) provides:

"(a) The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held. The court shall also have the authority at any time

---

[9]     In *People v. Ramirez* (2008) 159 Cal.App.4th 1412 (*Ramirez*), the court explained that the distinction between sections 1203.2 and 1203.3, when applied in the probation context, is that section 1203.2 applies upon a probationer's rearrest on a probation violation. (See *Ramirez, supra*, at p. 1425 ["Section 1203.3 does not apply after a probationer is rearrested on a probation violation. [Citations.] Instead, when a probationer is rearrested, the governing statute is section 1203.2"]; see also § 1203.3, subd. (e) ["This section does not apply to cases covered by Section 1203.2"].) Although there is no authority discussing the issue, presumably the same distinction applies in the mandatory supervision context. However, we need not definitively resolve this issue in order to decide the People's appeal.

during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term."

Section 1203.3, subdivision (b) describes the manner by which a court may exercise such authority:

"(b) The exercise of the court's authority in subdivision (a) to revoke, modify, or change probation or mandatory supervision, or to terminate probation, is subject to the following:

"(1) Before any sentence or term or condition of probation or condition of mandatory supervision is modified, a hearing shall be held in open court before the judge. The prosecuting attorney shall be given a two-day written notice and an opportunity to be heard on the matter, except that, as to modifying or terminating a protective order in a case involving domestic violence, as defined in Section 6211 of the Family Code, the prosecuting attorney shall be given a five-day written notice and an opportunity to be heard.

"(A) If the sentence or term or condition of probation or the term or any condition of mandatory supervision is modified pursuant to this section, the judge shall state the reasons for that modification on the record.

"(B) As used in this section, modification of sentence shall include reducing a felony to a misdemeanor."

4.    *Application*

Section 1170, subdivision (h)(5)(B)(i) expressly states that a period of mandatory supervision may be terminated by court order, and contains no limitation of any kind on a trial court's exercise of such authority. Further there is nothing in the text of section 1170, subdivision (h)(5)(B)(i) that would indicate that a trial court does not have the authority to modify the sentence of a defendant subject to mandatory supervision.

10

In addition, neither section 1203.2, subdivisions (a) and (b) nor section 1203.3, which govern proceedings to revoke or modify mandatory supervision, contains any language that would require a court to impose the suspended portion of the sentence upon early termination of mandatory supervision. Similarly, neither statute expressly or implicitly restricts a court from modifying a defendant's sentence. On the contrary, section 1203.3, subdivision (b)(1)(A) expressly states that a court *may* modify a defendant's "sentence" or a "term or . . . condition of mandatory supervision." (See § 1203.3, subd. (b)(1)(A) ["If the sentence . . . or the term or any condition of mandatory supervision is modified pursuant to this section, the judge shall state the reasons for that modification on the record"; see also § 1203.3, subd. (b)(1)(B) ["As used in this section, modification of sentence shall include reducing a felony to a misdemeanor"]; cf. *People v. Leiva* (2013) 56 Cal.4th 498, 504 ["Section 1203.3, subdivision (a), empowers the trial court 'at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence' "].)

The People argue that the trial court was without jurisdiction to modify Camp's sentence because in "[*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*)] the California Supreme Court held that where the sentence imposed is a state prison commitment, a trial court lacks authority to substantially modify the original judgment after it has been imposed and executed." We are not persuaded by this argument.

In *Dix*, the California Court Supreme Court referred to "the *common law rule* that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix,*

11

*supra,* 53 Cal.3d at p. 455, italics added.) A trial court's authority to impose mandatory supervision, however, is entirely *statutory*. We are aware of no authority that has extended the common law rule referred to in *Dix* to the mandatory supervision context, and the People offer no reasoned argument for doing so here. (Cf. *People v. Howard* (1997) 16 Cal.4th 1081, 1092 (*Howard*) [explaining that the common law principle referred to in *Dix* does not apply in the probation context because "the authority to grant probation and to suspend imposition or execution of sentence is wholly statutory"].)

Extending the common law rule referred to in *Dix* to the mandatory supervision context would create a conflict with language in section 1203.3, subdivision (b)(1)(A), authorizing a court to modify a defendant's "sentence" in revoking or modifying mandatory supervision. (See also *Howard, supra*, 16 Cal.4th at p. 1093 [noting that, with respect to a probationer, a trial court "has authority to reduce a previously imposed but suspended sentence at any time prior to defendant's rearrest"].) Accordingly, we reject the People's contention that, under *Dix*, "once Camp began serving the custodial portion of his sentence, the trial court was without jurisdiction to modify or alter the term of the suspended sentence."

The People also contend that the trial court's order terminating Camp's mandatory supervision without ordering him to serve the suspended portion of his sentence in custody is contrary to the California Supreme Court's decision in *Howard*, *supra*, 16 Cal.4th 1081. In *Howard,* the California Supreme Court addressed whether, after a probationer has been rearrested, a trial court has discretion in a proceeding "revoking

12

probation to reduce a probationer's previously imposed but suspended sentence." (*Id.* at p. 1084.) In resolving this issue, the *Howard* court relied on the "important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences." (*Id.* at p. 1087.) The *Howard* court explained that when a trial court suspends *imposition* of a sentence before placing a defendant on probation, the court has full sentencing discretion when revoking probation. (*Ibid.*) However, the *Howard* court further concluded that when a trial court suspends *execution* of sentence, section 1203.2, subdivision (c)[10] restricts a court's authority to impose a sentence different from that previously imposed. In reaching this conclusion, the *Howard* court reasoned in part:

> "In our view, section 1203.2, subdivision (c) . . . gives the court discretion, on revocation and termination of probation, either (1) to revoke the suspension of sentence and commit the probationer to prison for the term prescribed in the suspended sentence, or (2) to decline to revoke the suspension or to order confinement. If the court does order a prison commitment, however, . . . section 1203.2, subdivision (c) . . . set[s] forth the rule that the previously suspended judgment shall 'be in full force and effect.' " (*Howard, supra,* at p. 1094, italics omitted.)

The People contend that the "logic of the *Howard* decision applies with equal force here," reasoning that, "[s]ection 1170, subdivision (h)(5)(B)(i), which permitted the

---

10      The *Howard* court stated, "section 1203.2, subdivision (c), recites that following the defendant's rearrest, and on revocation and termination of probation, 'if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that *the judgment shall be in full force and effect*.' " (*Howard, supra*, 16 Cal.4th at pp. 1087-1088, quoting § 1203.2, subd. (c).)

13

suspended sentence during mandatory supervision, expressly directs the court to employ the procedures under section 1203.2, the same section addressed in *Howard*."

The People's argument suffers from a fatal textual flaw. Section 1170, subdivision (h)(5)(B)(i) provides that any proceeding to revoke or modify mandatory supervision "shall be conducted pursuant to either *subdivisions (a) and (b)* of Section 1203.2 or Section 1203.3." *Howard* is based on section 1203.2, *subdivision (c)*, a provision that has no applicability in the mandatory supervision context. Thus, *Howard* does not support the People's contention that the trial court imposed an unauthorized sentence in this case.

In any event, even assuming that section 1203.2, subdivision (c) applies in the mandatory supervision context, the trial court did not impose an unauthorized sentence under the reasoning of *Howard*. The *Howard* court interpreted section 1203.2, subdivision (c) as permitting a trial court, in revoking and terminating probation, to "*decline* to revoke the suspension [of sentence] or to order confinement." (*Howard, supra*, 16 Cal.4th at p. 1094, italics added; see also *ibid*. [stating that, upon revocation and termination of probation, "[*i*]*f* the court does order a prison commitment" (italics added) the previously suspended judgment shall be in effect].) Thus, even assuming that section 1203.2, subdivision (c) applies in the mandatory supervision context, the trial court was not *required*, under *Howard*, to revoke the suspended portion of Camp's sentence and order him to serve the remainder of the suspended portion of his sentence in custody.

The gist of the dissent is that the majority "disregards the trial court's limited power to act in the case of a previously imposed and suspended sentence under *People v. Howard*[, *supra*, 16 Cal.4th. at p. 1088], and section 1203.2, subdivision (c)."  In support of this contention, the dissent argues that our conclusion that section 1203.2, subdivision (c) has no application in the mandatory supervision context is "contrary to the California Supreme Court's recent decision in *People v. Scott* [(2014) 58 Cal.4th 1415, 1424 (*Scott*)]."

Our conclusion is not contrary to *Scott*.  In fact, *Scott* did not even involve *mandatory supervision*.  Rather, the Supreme Court considered whether the Realignment Act applied to defendants who were placed on *probation* before the operative date of the Realignment Act.  (See *Scott, supra*, 58 Cal.4th at p. 1419 [considering "the applicability of the Realignment Act to the category of defendants who, prior to October 1, 2011, have had a state prison sentence imposed with execution of the sentence suspended pending successful completion of a term of *probation*, and who, after October 1, 2011, have their probation revoked and are ordered to serve their previously imposed term of incarceration," italics added].)  Further, there is nothing in *Scott* that suggests that section 1203.2, subdivision (c) applies in the mandatory supervision context, and the dissent cites no such language.

In addition, as noted previously, the statute that authorizes the imposition of split sentences provides that "*subdivisions (a) and (b) of Section 1203.2* or Section 1203.3" (§ 1170, subdivision (h)(5)(B)(i), italics added) apply to proceedings to revoke or modify

15

mandatory supervision, and makes no reference to section 1203.2, *subdivision (c)*.

Moreover, section 1203.2, subdivision (c) expressly applies "[u]pon any revocation and termination of *probation*," and does not refer to the revocation or termination of *mandatory supervision*. (Italics added.) In short, section 1170, subdivision (h)(5)(B) does not "mean [that] all terms, conditions, and procedures of *probation* apply to *mandatory supervision*." (*People v. Rahbari* (2014) 232 Cal.App.4th. 185, 193, italics altered [citing amendments to section 1203.2 made following the passage of section 1170, subdivision (h)(5)(B)].)[11]

The People note that California Rules of Court,[12] rule 4.435(b)(2) provides, "If the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment." However, what the People fail to acknowledge is that this provision applies only "*when the sentencing judge determines that the defendant will be committed to prison.*" (Rule 4.435(b).) When read in its

---

[11] Further, as noted in the text, the *Howard* court interpreted section 1203.2, subdivision (c) as permitting a trial court, in revoking and terminating probation, to "*decline* to revoke the suspension [of sentence] or to order confinement." (*Howard, supra*, 16 Cal.4th at p. 1094, italics added). Thus, even assuming that section 1203.2, subdivision (c) applies in this case, the trial court was not *required*, upon revoking and terminating mandatory supervision, to order confinement.

[12] All rule references are to the California Rules of Court.

16

entirety, rule 4.435(b) does not support the People's contention that the trial court was required to imprison Camp upon terminating mandatory supervision.

The People also note that, "for purposes of probation, section 1203.3 allows the court to " 'terminate the period of probation,' " and also " '*discharge the person so held*,' " (italics added by the People), but that the discharge language is absent from the sentence addressing the court's authority to terminate mandatory supervision.[13]  The People contend that this distinction demonstrates that the Legislature "implicitly recognized" that a trial court is not permitted to terminate a period of mandatory supervision early without ordering the defendant into custody.  We disagree.

As noted previously, section 1170, subdivision (h)(5)(B) expressly authorizes a trial court to terminate a defendant's mandatory supervision prior to the conclusion of the period of supervision initially ordered by the court.  In addition, neither section 1170, subdivision (h)(5)(B))(i), nor subdivisions (a) and (b) of section 1203.2 or section 1203.3 contains any language that would suggest that a court's power to terminate mandatory supervision is restricted in any manner.  (Compare with § 1203.2, subd. (b)(1) [providing "the court shall not terminate *parole* pursuant to this section," italics added].)

---

[13]    (Compare § 1203.3, subd. (a) ["The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held"] with *ibid.* ["The court shall also have the authority at any time during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term"].)

17

If the Legislature intended to restrict a trial court's sentencing authority upon the revocation and termination of mandatory supervision, we presume that it would have adopted statutory language evincing such intent.  For example, the Legislature could have drafted the statute to state, "Upon any revocation and termination of mandatory supervision, the court shall revoke the suspension of execution of sentence and order that the judgment shall be in full force and effect," thereby requiring the court to impose the suspended portion of the custodial term.  (Cf. § 1203.2, subd. (c) [providing that "[u]pon any revocation and termination of probation," that " if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect"].)  In the absence of any such statutory language, we reject the People's argument that section 1203.3 contains an implicit limitation on the trial court's sentencing authority when terminating mandatory supervision.

Finally, we observe that the People's position that a trial court lacks jurisdiction to terminate a period of mandatory supervision without placing the defendant in custody would mean, as a practical matter, that a trial court would be unable to terminate mandatory supervision early based on a defendant's good behavior.  As J. Couzens and T. Bigelow state in their treatise, *Felony Sentencing After Realignment*, "rewarding good behavior generally does not translate into additional custody time."  (Couzens and Bigelow*, Felony Sentencing After Realignment* (rev. Mar. 4, 2014) p. 23; available at <http:// www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Jan. 12,

18

2015]).)[14]  In discussing whether a trial court may terminate a defendant's mandatory supervision without placing the defendant in custody, Couzens and Bigelow explain:

> "It is not logical to conclude the Legislature intended that a court must order a defendant into custody once he has shown the interests of justice no longer demonstrate a need for further supervision.  It is logical for the Legislature to grant the court authority to terminate mandatory supervision early when the defendant has reformed and because the mandatory supervision portion of the sentence occurs after the custody portion has been completed."  (*Ibid.*)

In an attempt to avoid this absurd result, the dissent offers an interpretation of section 1203.3, subdivision (a) that has no basis in the text of the applicable statutes.  The dissent concludes that a trial court's "sole authority" to terminate mandatory supervision is "on grounds of a defendant's good conduct and reform, if the ends of justice are served."  The only support the dissent offers in support of this assertion is the following sentence of section 1203.3, subdivision (a): "The court may at any time when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on *probation* shall warrant it, terminate the period of probation, and discharge the person so held."[15]  (§ 1203.3, subdivision (a), italics added.)  On its face, this provision

_____

14      California courts have frequently cited this memorandum, noting that it reflects the views of "two preeminent sentencing authorities."  (*People v. Hul* (2013) 213 Cal.App.4th 182, 187.)

15      According to the dissent, this is because section 1170, subdivision (h)(5)(B)(i) provides that "mandatory supervision . . . shall be done 'in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation.' "  What section 1170, subdivision (h)(5)(B)(i) actually says is that "the defendant shall be *supervised* by the county probation officer in accordance with the terms, conditions, and

expressly *authorizes* the court to terminate *probation* for good conduct. We decline to interpret this provision as *limiting* a trial court's authority to terminate a period of *mandatory supervision*.

Accordingly, we conclude that the trial court did not act in excess of its jurisdiction in terminating Camp's mandatory supervision and in modifying his sentence.[16]

procedures generally applicable to persons placed on probation," (italics added) but that "proceeding[s] to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3." (§ 1170, subdivision (h)(5)(B)(i).) As is made clear in the text, subdivisions (a) and (b) of section 1203.2 and section 1203.3 have particular provisions that apply to *mandatory supervision*, and other provisions that apply to *probation*. (See *People v. Rahbari, supra*, 232 Cal.App.4th. at p. 193.)

16    The People also contend that the trial court's modification of Camp's sentence violated the parties' plea agreement. Assuming the People did not forfeit this contention by failing to object on this ground in the trial court, there is nothing in the plea agreement purporting to restrict the court from exercising its statutorily granted authority to terminate Camp's mandatory supervision (§ 1170, subd. (h)(5)(B)(i)) or to modify his sentence (§ 1203.3 subd. (b)(1)(A)). Thus, since "plea bargains in California are ' "deemed to incorporate and contemplate . . . the existing law" (*Doe v. Harris* (2013) 57 Cal.4th 64, 69), we reject the People's contention that the trial court's exercise of its statutorily granted authority violated the parties' plea agreement.

20

## IV.

## DISPOSITION

The trial court's order terminating Camp's mandatory supervision and modifying his sentence is affirmed.

AARON, J.

I CONCUR:

McINTYRE, Acting P. J.

21

O'ROURKE, J., Dissenting

I respectfully dissent. Reading the Criminal Justice Realignment Act of 2011 (the Realignment Act) in a plain, commonsense manner (see *People v. Scott* (2014) 58 Cal.4th 1415, 1421), the trial court erred by terminating Hugo Joseph Camp's period of mandatory supervision and releasing him from serving the remainder of his suspended sentence. In reaching the contrary conclusion, the majority engages in an overly broad construction of the language of Penal Code[1] sections 1170, subdivision (h)(5)(B)(i) ("The period of supervision shall be mandatory, and may not be earlier terminated except by court order") and 1203.2, subdivision (b)(1) ("Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person pursuant to this subdivision, except that the court shall not terminate parole pursuant to this section"). These provisions cannot reasonably be read as broad or unlimited grants of authority to terminate the mandatory supervision period. The majority also disregards the trial court's limited power to act in the case of a previously imposed and suspended sentence under *People v. Howard* (1997) 16 Cal.4th 1081, 1088 and section 1203.2, subdivision (c). (See also *People v. Scott*, at pp. 1422-1424; *People v. Kelly* (2013) 215 Cal.App.4th 297, 302-303.) In my view, the relevant statutes limit termination of the mandatory

---

[1] Statutory references are to the Penal Code.

supervision period to situations where either the defendant is rearrested for a probable violation of the terms and conditions of his supervision (section 1203.2, subd. (a)), or when the court finds that termination is warranted based on a showing of the defendant's "good conduct and reform." (§ 1203.3, subd. (a)). Because neither circumstance was shown here, "[t]he period of supervision shall be mandatory. . . ." (§ 1170, subd. (h)(5)(B)(i).)

As the majority points out, section 1170, subdivision (h)(5)(B)(i) requires that mandatory supervision revocation and modification proceedings be conducted under the procedures set forth in subdivisions (a) and (b) of sections 1203.2 and 1203.3. Section 1203.2, subdivision (a) authorizes the court to "revoke and terminate" a defendant's period of mandatory supervision upon the defendant's rearrest or issuance of a warrant for his or her rearrest, as long as the court has reason to believe the defendant has violated any of his or her mandatory supervision conditions and the interests of justice require. Under these circumstances, probation revocation procedures, including the relevant California Rules of Court, apply. (See *People v. Rahbari* (2014) 232 Cal.App.4th 185; Stats. 2012, ch. 43, § 30; see Legis. Counsel's Dig., Sen. Bill No. 1023 (2011-2012 Reg. Sess.) ["The bill would require the revocation or modification of mandatory supervision to be made pursuant to provisions of existing law providing for the revocation of probation."].) Thus, "upon revocation and suspension of execution of the judgment, the court lacks jurisdiction 'to do anything other than order the execution of the previously imposed . . . sentence.' " (*People v. Scott*, *supra*, 58 Cal.4th at p. 1422; see also *People v.*

*Howard*, *supra*, 16 Cal.4th at pp. 1087-1088.)[2] " 'The revocation of the suspension of execution of the judgment brings the former judgment into full force and effect . . . .' " (*People v. Howard*, at p. 1087; see also *People v. Mora* (2013) 214 Cal.App.4th 1477, 1482; Cal. Rules of Court, rule 4.435(b)(2) ["If the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment"].) Nothing in this provision authorizes a trial court to terminate a defendant's mandatory supervision and discharge or relieve him from serving the remainder of his sentence.

---

[2] The majority asserts that *People v. Howard*, *supra*, 16 Cal.4th 1081 is based on section 1203.2, subdivision (c), which they maintain has no application in the mandatory supervision context. The conclusion is contrary to the California Supreme Court's recent decision in *People v. Scott*, *supra*, 58 Cal.4th at page 1424, in which the court acknowledged that the Legislature intended the term "sentenced" in the Realignment Act to be consistent with that subdivision. (See also *People v. Kelly*, *supra*, 215 Cal.App.4th at pp. 305-306; *People v. Montrose* (2013) 220 Cal.App.4th 1242, 1248 [Legislature did not see fit to change section 1203.2, subdivision (c) of the Realignment Act when it amended the statute and it is deemed aware of existing laws at the time legislation is enacted].) Additionally, I disagree with the majority's reading of the statute and its implementing rule of court (Cal. Rules of Court, rule 4.435(b)(2)). Section 1170, subdivision (h)(5)(B)(i) specifies how the court must conduct modification and revocation proceedings. Section 1203.2, subdivision (c) governs what happens *after* those revocation and termination proceedings have occurred, providing in part: "Upon any revocation and termination of probation . . . , if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect." (See *People v. Rahbari*, *supra*, 232 Cal.App.4th at p. 192 [mandatory supervision imposed under section 1170, subd. (h) is akin to a state prison commitment].) Finally, the majority cites *Howard* for the proposition that a court has authority during the period of probation to reduce a previously imposed but suspended sentence at any time prior to rearrest, but *Howard* makes clear that that authority is "subject to statutory restrictions . . . ." (*People v. Howard*, 16 Cal.4th at pp. 1092-1093.)

3

Subdivision (b) of section 1203.2 permits, upon motion of the court or other specified parties, modification, revocation, and termination of supervision, "*pursuant to this subdivision . . . .*" (§ 1203.2, subd. (b)(1), italics added.) This provision merely authorizes the court or parties to initiate such proceedings by motion in accordance with specified procedural requirements.[3] This subdivision does not broadly authorize early termination of the period of mandatory supervision; it is conditioned on the defendant's rearrest and the court's reason to believe the defendant violated his or her supervision conditions.

---

[3] Subdivision (b)(1) of section 1203.2 continues: "The court in the county in which the person is supervised has jurisdiction to hear the motion or petition, or for those on parole, either the court in the county of supervision or the court in the county in which the alleged violation of supervision occurred. A person supervised on parole or postrelease community supervision pursuant to Section 3455 may not petition the court pursuant to this section for early release from supervision, and a petition under this section shall not be filed solely for the purpose of modifying parole. Nothing in this section shall prohibit the court in the county in which the person is supervised or in which the alleged violation of supervision occurred from modifying a person's parole when acting on the court's own motion or a petition to revoke parole. The court shall give notice of its motion, and the probation or parole officer or the district attorney shall give notice of his or her petition to the supervised person, his or her attorney of record, and the district attorney or the probation or parole officer, as the case may be. The supervised person shall give notice of his or her petition to the probation or parole officer and notice of any motion or petition shall be given to the district attorney in all cases. The court shall refer its motion or the petition to the probation or parole officer. After the receipt of a written report from the probation or parole officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the supervision of the supervised person upon the grounds set forth in subdivision (a) if the interests of justice so require."

4

Section 1203.3, subdivision (a) grants the court authority during the period of mandatory supervision to "revoke, modify or change the *conditions of the court's order* suspending the execution of the concluding portion of the supervised person's term." (Italics added.) This provision does not govern termination of the supervision period, which the Legislature knows how to expressly and separately address. In my view, the language used by the Legislature limits revocation, modification or changes with regard to mandatory supervision to the supervised release *terms and conditions*, that is, those conditions either forbidding acts or requiring certain acts during the defendant's period of mandatory supervision.

Subdivision (a) of section 1203.3 also provides that the court may terminate and discharge the person held on probation "*when the good conduct and reform of the person so held on probation warrant it . . . .*" (§ 1203.3, subd. (a), italics added.) This clause, though it refers to persons on probation, applies under section 1170, subdivision (h)(5)(B)(i) to mandatory supervision, which shall be done "in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation . . . ."[4] Under section 1203.3 the trial court's sole authority to terminate the period of mandatory supervision is on grounds of a defendant's good conduct and reform, if the ends of justice are served. (§ 1203.3, subd. (a).)

---

[4] More fully, section 1170, subdivision (h)(5) provides: "The court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, may commit the defendant to county jail as follows: [¶] (A) For a full term in custody as determined in accordance with the applicable sentencing law. [¶] (B)(i) For a term as determined in accordance

The limitations on the trial court's power to terminate mandatory supervision as I have described is reflected in the Legislature's phrasing of section 1203.3, subdivision (b): "The exercise of the court's authority in subdivision (a) to revoke, modify, or change probation or mandatory supervision, or to terminate probation, is subject to the following . . . ." (See also § 1203.3, subd. (b)(1) ["Before any sentence or term or condition of probation, *or condition of mandatory supervision* is modified . . . .] & (b)(1)(A) ["If the sentence or term or condition of probation *or the term or any condition of mandatory supervision* is modified pursuant to this section . . . ."], italics added.) The Legislature's use of the terms "revoke, modify, or change" with respect to mandatory supervision, and the word "terminate" only with respect to probation, reflects that termination of the period of supervision is limited to the "good conduct and reform" grounds set out in subdivision 1203.3, subd. (a). The remainder of section 1203.3 merely sets out the manner in which the court is permitted to act, requiring, "[b]efore any

---

with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. . . . [¶] (ii) The portion of a defendant's sentencing term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision." Nothing in this language changes my conclusion as to the application of probation revocation procedures to persons on mandatory supervision. (See *People v. Rahbari*, *supra*, 232 Cal.App.4th at p. 193 [observing the Legislature amended the statute governing probation revocation to provide that its procedures also apply to mandatory supervision].)

6

sentence or. . . condition of mandatory supervision is modified," a hearing in open court with specified notice, and a statement of reasons. (§ 1203.3, subd. (b)(1).)

Here, Camp agreed to his split sentence including mandatory supervision as part of a plea. The People and the courts are bound to uphold the terms of a plea agreement, which is a form of contract. (*Doe v. Harris* (2013) 57 Cal.4th 64, 69; *People v. Segura* (2008) 44 Cal.4th 921, 930-931; *People v. Blount* (2009) 175 Cal.App.4th 992, 997.) The court's statutory authority to modify conditions of mandatory supervision in the exercise of its jurisdiction over Camp (§ 1203.3) cannot extend to modifying a material term of his plea. (*Segura*, at pp. 925, 936.) " ' "Once the court has accepted the terms of the negotiated plea, '[i]t lacks jurisdiction to alter the terms of [the] plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree.' " ' " (*Blount*, at p. 997, quoting *Segura*, at p. 931.) Because it was impossible due to subsequent events for the plea agreement to be performed and the court could not effectuate the terms of the plea, the court was required to permit Camp to withdraw his plea. (See § 1192.5; *People v. Jackson* (1981) 121 Cal.App.3d 862, 869; *People v. Pinon* (1973) 35 Cal.App.3d 120, 125.) The trial court has no discretion "to make its own ad hoc adjustment to fit what it perceives as equity and justice." (*In re Chamberlain* (1978) 78 Cal.App.3d 712, 718.)

If Camp declines to withdraw his plea, he would be out of compliance with his conditions of mandatory supervision, giving the court authority to revoke and terminate the period of mandatory supervision and order him to return to local custody for the concluding portion of his term. " 'The revocation of the suspension of execution of the

7

judgment brings the former judgment into full force and effect . . . .' " (*People v. Howard*, *supra*, 16 Cal.4th at p. 1087.)

For the foregoing reasons, I would reverse the order and remand the matter to give Camp an opportunity to withdraw his plea and absent that, for the court to order him to serve the remainder of his term in local custody.

O'ROURKE, J.