Filed 9/4/20  P. v. Jackson CA6
(opinion on transfer from Supreme Court)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS JACKSON,<br><br>    Defendant and Appellant. | H046139, H046413<br>(Monterey County<br> Super. Ct. No. SS161816A) |

In 2016, defendant Thomas Jackson pleaded no contest to possession for sale of a controlled substance (Health & Saf. Code, § 11351)[1] and admitted a prior drug conviction enhancement under former section 11370.2, subdivision (c).  On January 13, 2017, the trial court imposed a split sentence of six years, composed of three years for count 1 and three years for the enhancement under former section 11370.2, subdivision (c) with the execution of the last four years suspended and made a period of mandatory supervision. Jackson did not appeal from his sentence.

On April 18, 2018, Jackson admitted that he violated the terms of his mandatory supervision.  On May 22, 2018, Jackson filed a motion for modification of his sentence under Senate Bill No. 180 (Sen. Bill 180).  Sen. Bill 180, which became effective January 1, 2018, amended section 11370.2 by limiting sentencing enhancements to prior convictions that, unlike Jackson's, involved using a minor to commit drug-related crimes. (Stats. 2017, ch. 677, § 1.)  Jackson argued that under Sen. Bill 180, the prior drug

---

[1] Unspecified statutory references are to the Health and Safety Code.

conviction enhancement under former section 11370.2, subdivision (c) no longer applied to his case. On June 29, 2018, the trial court denied Jackson's motion.

In our prior opinion in this matter, *People v. Jackson* (Aug. 20, 2019, H046139, H046413 [nonpub. opn.]), we affirmed the trial court's order denying Jackson's motion to modify his sentence (H046139) and the order revoking mandatory supervision (H046413). On October 30, 2019, the California Supreme Court granted Jackson's petitions for review (S258139, S258141), deferred briefing, and ultimately transferred the matters back to this court with directions to vacate our prior decision and reconsider the cause in light of *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*).

We hereby vacate our prior decision, and upon reconsideration, we conclude that Sen. Bill 180 applies retroactively to Jackson. Accordingly, we reverse the trial court's order revoking Jackson's mandatory supervision and the order denying his motion for modification of his mandatory supervision. We remand the matter for the trial court to strike the section 11370.2 enhancement and resentence Jackson.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2016, an information was filed charging Jackson with possession for sale of a controlled substance (methamphetamine) (§ 11378; count 1), transportation of a controlled substance (methamphetamine) (§ 11379, subd. (a); count 2), possession for sale of a controlled substance (heroin) (§ 11351; count 3), and sale, transportation, or offer to sell a controlled substance (heroin) (§ 11352, subd. (a); count 4). It was alleged as to each count that Jackson had prior drug convictions (former § 11370.2, subds. (a), (c)). It was further alleged that Jackson had served a prior prison term pursuant to Penal Code section 667.5, subdivision (b). Jackson pleaded no contest to count 1 and admitted a prior drug conviction enhancement under former section 11370.2, subdivision (c).

On January 13, 2017, the trial court imposed a split sentence of six years, composed of three years for count 1 and three years for the enhancement under former

2

section 11370.2, subdivision (c) with the execution of the last four years suspended and made a period of mandatory supervision.  Jackson did not appeal from his sentence.

In April 2018, Jackson admitted violating the terms of his mandatory supervision. In May 2018, Jackson moved to modify his sentence under Sen. Bill 180, arguing that his prior drug conviction no longer qualified for sentencing enhancement under section 11370.2, subdivision (c) as amended.  The trial court denied Jackson's motion.

In July 2018, the probation department filed a petition alleging that Jackson had violated the terms of his mandatory supervision.  On August 14, 2018, the district attorney's office filed a declaration alleging that Jackson had committed violations of sections 11364, subdivision (a) and 11377, subdivision (a).[2]

On October 12, 2018, the trial court revoked Jackson's mandatory supervision. The trial court ordered execution of the previously suspended sentence and ordered Jackson to serve the balance of his six-year term in jail.

## II.  DISCUSSION

### A.  Supplemental briefing

Following transfer from the California Supreme Court, the parties submitted supplemental briefing, which we summarize herein.  (Cal. Rules of Court, rules 8.200(b) & 8.528(f).)

Jackson contends that Sen. Bill 180 applies retroactively to him because the trial court had limitless "authority to 'modify, revoke, or terminate' [his] mandatory supervision" pursuant to Penal Code section 1203.2.  Because the trial court retained jurisdiction to modify his sentence, the judgment was not final and, under *McKenzie*, the trial court "could . . . constitutionally afford him the benefit of the intervening change in sentencing law."

---

[2] According to the minute order and the transcript of the hearing held on August 17, 2018, Jackson denied that he violated the terms of his mandatory supervision based on the allegations in the petition filed on July 10, 2018.

The Attorney General counters that Sen. Bill 180 does not apply retroactively to Jackson because his split sentence (Pen. Code, § 1170, subd. (h)(5)), where the trial court imposed, but suspended execution of the last four years of his sentence, constituted a judgment of conviction that became final after Jackson did not seek review. The Attorney General distinguishes *McKenzie* because the trial court in that case suspended *imposition* of sentence, not execution, and granted the defendant probation, such that when Sen. Bill 180 took effect, there was no final judgment of conviction against the defendant.

B.    *Retroactivity analysis*

Effective January 1, 2018, Sen. Bill 180 limited the scope of section 11370.2 enhancements to those prior convictions for sales of narcotics involving a minor in violation of section 11380. (Stats. 2017, ch. 677, § 1.) Accordingly, Sen. Bill 180 eliminated the former section 11370.2, subdivision (c) enhancement that was imposed in Jackson's case. Sen. Bill 180 applies retroactively to all judgments that were not final on January 1, 2018. (*McKenzie, supra*, 9 Cal.5th at pp. 45-46; *People v. Millan* (2018) 20 Cal.App.5th 450, 455-456.) The issue in this case is whether, under *McKenzie*, Jackson's judgment was final when Sen. Bill 180 took effect.

Generally, "where [an] amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed," so long as the amended statute takes effect before the judgment of conviction is final. (*In re Estrada* (1965) 63 Cal.2d 740, 748; *id.* at p. 745.) "This rule rests on an inference that when the Legislature has reduced the punishment for an offense, it has determined the 'former penalty was too severe' [citation] and therefore 'must have intended that the new statute imposing the new lighter penalty . . . should apply to every case to which it constitutionally could apply.' " (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600.) *Estrada*'s retroactivity rule applies both to amendments that

4

reduce penal sanctions and those that eliminate penal sanctions entirely. (*McKenzie*, *supra*, 9 Cal.5th at p. 45.)

In *McKenzie,* the California Supreme Court considered "whether a convicted defendant who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*McKenzie, supra*, 9 Cal.5th at p. 43.) Even though the time to appeal the order granting probation had lapsed, the court held that the ameliorative statutory amendments applied retroactively because "when the revisions to section 11370.2 took effect, defendant's ' "criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it." ' " (*Id.* at p. 45.) Although the *McKenzie* court was not confronted with the situation raised by this case—the finality of a judgment where a split sentence is imposed pursuant to Penal Code section 1170, subdivision (h)(5) but *execution* of part of the sentence is suspended while the defendant is placed on mandatory supervision—we find its reasoning to be dispositive here as well.

The California Supreme Court reaffirmed in *McKenzie* that " ' "when the [L]egislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." ' " (*McKenzie, supra*, 9 Cal.5th at p. 45.) The court determined that in the situation before it, where the statutory amendments became effective during the defendant's appeal of the trial court's revocation of probation and imposition of sentence, "[i]t [could not] be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*Id.* at p. 46.)

Jackson's split sentence was authorized under Penal Code section 1170, subdivision (h)(5).  Under this statute, trial courts " 'have [the] discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision.' " (*People v. Camp* (2015) 233 Cal.App.4th 461, 467 (*Camp*).)  When imposing a split sentence, the trial court imposes a sentence on the defendant but "suspend[s] execution of a concluding portion of the term for a period selected at the court's discretion."  (Pen. Code, § 1170, subd. (h)(5)(A).)  "The period of supervision shall be mandatory, and may not be earlier terminated except by court order.  Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of [Penal Code] Section 1203.2 or Section 1203.3." (*Id*., subd. (h)(5)(B).)

Under section Penal Code section 1203.2, subdivision (b)(1), the court may, on the motion of the supervised person, "revoke, or terminate supervision of the person pursuant to this subdivision . . . ."  And under Penal Code section 1203.3, subdivision (a), the court has the authority "at any time during the term of [mandatory supervision] to revoke, modify, or change its order of suspension of imposition or execution of sentence."

Thus, under Penal Code section 1170, subdivision (h)(5)(B), the trial court had the express statutory authority to terminate Jackson's mandatory supervision for violating the conditions of his supervision.  (See *Camp*, *supra*, 233 Cal.App.4th at p. 470 [Pen. Code § 1170, former subd. (h)(5)(B) "contain[s] no limitation of any kind on a trial court's exercise of [its] authority" to terminate mandatory supervision].)  Moreover, neither Penal Code section 1170, subdivision (h)(5)(B) nor Penal Code sections 1203.2, subdivisions (a) and (b), or 1203.3 required the trial court to order the suspended portion of Jackson's sentence executed upon early termination of his mandatory supervision.  (See *Camp*, *supra*, at p. 470.)  Given the trial court's comprehensive, continuing authority to revoke, modify, or terminate Jackson's mandatory supervision, "[i]t cannot be said that

6

this criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)

Our conclusion is also consistent with *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), which was cited by the California Supreme Court to support its analysis in *McKenzie*. (*McKenzie*, *supra*, 9 Cal.5th at pp. 46-47.) In *Chavez*, the court considered whether a trial court could dismiss a criminal action pursuant to Penal Code section 1385 after the defendant's term of probation had expired. (*Chavez*, *supra*, at p. 777.) The court held that the trial court was without authority to do so because the action had ended when the defendant's probation expired. (*Ibid.*)

In reaching its decision, the California Supreme Court considered when a final judgment is pronounced in cases where a trial court grants probation. (*Chavez*, *supra*, 4 Cal.5th at p. 777.) The court explained that no final judgment is rendered when a trial court grants probation and suspends the imposition *or* the execution of sentence. (*Id.* at p. 781.) "In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him or her].' [Citation.] In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.' [Citation.] The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation." (*Ibid.*) There is no final judgment in either of these situations because "[d]uring the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment" under Penal Code sections 1203.2 and 1203.3. (*Chavez*, *supra*, at p. 782.) "[T]he court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation." (*Ibid.*)

The trial court in this case also retained the power to revoke Jackson's mandatory supervision and order the remainder of his sentence executed. (Pen. Code, §§ 1170, subd. (h)(5)(B), 1203.2, subds. (a), (b), 1203.3.) It had the authority to terminate his

7

mandatory supervision (Pen. Code, § 1170, subd. (h)(5)(B)) or to modify its terms (Pen. Code, §§ 1203.2, subds. (a), (b), 1203.3). Thus, based on the California Supreme Court's reasoning in *McKenzie* and *Chavez*, we conclude that for retroactivity purposes, the trial court's suspension of the execution of a portion of Jackson's sentence to place him on mandatory supervision pursuant to Penal Code section 1170, subdivision (h) "constitute[d] 'a judgment provisional or conditional in nature,' " rather than a final judgment, given the court's ongoing authority to revoke, modify, or terminate Jackson's mandatory supervision during the supervision term. (*Chavez*, *supra*, 4 Cal.5th at p. 781.)[3]

Accordingly, because the criminal proceedings against Jackson were ongoing and, for retroactivity purposes, no final judgment had been pronounced when Jackson was brought before the trial court for violating mandatory supervision, Sen. Bill 180 applies retroactively to him. (See *McKenzie*, *supra*, 9 Cal.5th at p. 46 ["the cutoff point for application of ameliorative amendments [is] the date when the 'case[]' [citation] or 'prosecution[]' is 'reduced to final judgment' "].) In reaching this conclusion, we are guided by the " 'consideration of paramount importance' " articulated in *Estrada*: "the 'inevitable inference' that the Legislature, having 'determined that its former penalty was too severe,' 'must have intended' that the ameliorative statutory change 'should apply to every case to which it constitutionally could apply.' [Citation.] A contrary conclusion . . . would ' "serve no purpose other than to satisfy a desire for vengeance," '

---

[3] The Attorney General asserts that "[i]t is settled that an unappealed order of probation suspending execution of sentence is final for retroactivity purposes after 60 days, yet such orders are still subject to modification under Penal Code sections 1203.2 and 1203.3, the same statutes that govern the modification of orders imposing split sentences." However, the California Supreme Court in *Chavez* stated that a grant of probation with the execution of sentence suspended "constitute[d] 'a judgment provisional or conditional in nature,' " rather than a final judgment. (*Chavez*, *supra*, 4 Cal.5th at p. 781.)

and would have to rest on the impermissible view 'that the Legislature was motivated by [such] a desire.' " (*McKenzie*, *supra*, at p. 48.)

## III.  DISPOSITION

In case No. H046413, the order revoking mandatory supervision is reversed.

In case No. H046139, the order denying defendant's motion for modification of mandatory supervision is reversed.  The matter is remanded for the trial court to strike the Health and Safety Code section 11370.2 enhancement and resentence defendant.

_____
Premo, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Elia, J.

People v. Jackson
H046139, H046413