Filed 3/8/21  P. v. Ames CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073049 |
| v. | (Super.Ct.No. FMB17000152) |
| KENNETH LLOYD AMES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Joel S. Agron, Judge.  Affirmed with directions.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Alana R. Butler and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant, Kenneth Lloyd Ames, appeals the May 22, 2018 order of the superior court, revoking his mandatory supervision and ordering him to complete the rest of his five-year split sentence in county jail.  (See Pen. Code, § 1170, subd. (h)(5).)  The five-year split sentence was imposed on March 29, 2017, and includes two one-year terms for two prison priors under former section 667.5, subdivision (b).  (Stats. 2014, ch. 442, § 10.)  The court also imposed several fines and fees.

In this appeal, defendant raises five claims of error:  (1) his two one-year prison priors must be stricken from his five-year split sentence because he is entitled to the benefits of Senate Bill No. 136 (Senate Bill 136) (2019-2020 Reg. Sess.), which became effective on January 1, 2020, during the pendency of the current appeal; (2) the matter must be remanded to the trial court to determine whether he has the present ability to pay his $300 restitution fine and $70 in court assessments; (3) a $41 crime prevention fee was unauthorized and must be stricken; (4) a $30 administrative fee on his $300 restitution fine must also be stricken; and (5) the trial court's records must be corrected to show that the court imposed a $300, not a $330, mandatory supervision revocation restitution fine.

We agree that defendant is entitled to the benefits of Senate Bill 136 and to have his two prison priors stricken from his five-year sentence.  The People concede, and we also agree, that the $41 crime prevention fee must also be stricken as unauthorized, and the court's records must be corrected to show it imposed a $300 rather than a $330 mandatory supervision revocation restitution fine.  We conclude, however, that the $30 administrative fee on the $300 restitution fine was properly imposed.  We remand the

2

matter to conduct an ability to pay hearing on the $300 restitution fine and the $70 in court assessments.

We affirm the May 22, 2018 order in all other respects.

## II.  FACTS AND PROCEDURE

On March 29, 2017, defendant pled guilty to possessing a cane sword (Pen. Code, § 20510) and admitted to two prison priors (former § 667.5, subd. (b)).[1]  Three other prison prior allegations were dismissed.  The court imposed a five-year aggregate term: the upper term of three years for possessing the cane sword (§§ 20510, 1170, subd. (h)(1)), plus two years—one year each for the two prison priors (former § 667.5, subd. (b)).  The court awarded defendant 30 days of custody credits and suspended his remaining four-year-11-month sentence pending his successful completion of mandatory supervision.  (§ 1170, subd. (h)(5)(A).)  On May 22, 2018, defendant admitted violating the terms of his mandatory supervision, the court revoked the mandatory supervision, and the court ordered defendant to serve the rest of his five-year term in county jail.

In imposing the five-year split sentence on March 29, 2017, the court imposed several fines and fees, including a $40 court operations fee (Pen. Code, § 1465.8), a $30 court construction fee (Gov. Code, § 70373), and a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)).

The March 29, 2017 minute order shows that the court also imposed an aggregate crime prevention fine of $41 (§ 1202.5), and a 10 percent administrative fee of $30 on the

---

[1]  Undesignated statutory references are to the Penal Code.

3

$300 restitution fine (§ 1202.4, subd. (*l*).)  But, in orally pronouncing the March 29, 2017 judgment, the court did not mention the $41 fine or the $30 administrative fee.  Similarly, the May 22, 2018 minute order states that the court ordered defendant to pay a $330 mandatory supervision revocation restitution fine (§ 1202.45, subd. (b)), but the court did not mention the $330 fine in orally issuing the May 22, 2018 order.  Defendant appeals from May 22, 2018 order, and he has obtained a certificate of probable cause.[2]

## III.  DISCUSSION

A. *The Two Prison Priors Must Be Stricken from Defendant's Five-year Sentence*

Defendant claims that the two one-year terms that were imposed based on his two prison priors must be stricken from his five-year aggregate sentence because the March 29, 2017 judgment imposing the five-year *split sentence* was not final on appeal when Senate Bill 136 took effect on January 1, 2020.  We agree.

---

[2]  On August 1, 2018, the superior court received defendant's untimely notice of appeal from the May 22, 2018 order (Cal. Rules of Court, rule 8.308), and on August 3, 2018, the court denied defendant's request for a certificate of probable cause that accompanied his notice of appeal.  Defendant then petitioned this court for a writ of habeas corpus in *In re Ames* (Jun. 25, 2019, E072285), deeming his August 1, 2018 notice of appeal timely filed based on the "prison-delivery rule."  (*In re Jordan* (1992) 4 Cal.4th 116, 130; Cal. Rules of Court, rule 8.25(b)(5).)  We granted the petition and, at defendant's request, we take judicial notice of our file in *In re Ames*, *supra*, E072285. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

On June 25, 2019, in *In re Ames*, *supra*, E072285, this court ordered the superior court clerk to deem defendant's August 1, 2018 notice of appeal timely, to file it, and to prepare the normal record on appeal.  On December 6, 2019, we granted defendant's motion for leave to obtain a late certificate of probable cause.  On December 12, 2019, defendant filed a second notice of appeal from the May 22, 2018 order, along with a second request for a certificate of probable case.  On December 16, 2019, the superior court granted defendant's second request for a certificate of probable cause.  On December 17, 2019, defendant filed his operative notice of appeal, which has been deemed timely filed from the May 22, 2018 order.

1.  Senate Bill 136 and the *Estrada*[3] Rule

On October 8, 2019, the Governor signed Senate Bill 136, which amended Penal Code section 667.5, subdivision (b), effective January 1, 2020.  (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.)  Under the current version of the statute, a one-year prison prior enhancement may only be imposed on a defendant who has served a prior prison term for a sexually violent offense, defined in subdivision (b) of Welfare and Institutions Code section 6600, and who did not thereafter remain free of custody for five years.  (*Lopez*, at pp. 340-341; Pen. Code, § 667.5, subd. (b); see Stats. 2019, ch. 590, § 1.)[4]

Neither of defendant's two prison priors are based on his service of a prior prison term for a sexually violent offense.[5]  It is also undisputed that, under the *Estrada* rule, the amendments that Senate Bill 136 made to section 667.5 apply retroactively to defendants whose judgments were not final on appeal when the legislation took effect on January 1, 2020.  (*People v. Jennings*, *supra*, 42 Cal.App.5th at pp. 681-682.)

---

[3]  *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

[4]  Under former section 667.5, subdivision (b)—the version of the statute that was in effect when defendant's five-year split sentence was imposed on March 29, 2017— courts were required to impose a one-year prison prior enhancement on any defendant who had served a prior prison term for *any offense* and who did not thereafter remain free of custody for five years, unless the court struck the prison prior in the interests of justice under section 1385.  (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

[5]  One of defendant's two prison priors is based on his February 1, 2013 conviction for shooting at an occupied dwelling (Pen. Code, § 236); the other is based on his April 8, 2013 conviction for possessing a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)).

5

2. Split Sentences

The March 29, 2017 judgment imposing defendant's five-year split sentence was made under the Criminal Justice Realignment Act of 2011 (the Realignment Act). (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1; Pen. Code, § 1170, subd. (h).)  Under the Realignment Act, courts are required, subject to a few exceptions not applicable here, to sentence qualified low-level felony offenders to county jail, rather than to state prison, " 'or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision.' "  (*People v. Camp* (2015) 233 Cal.App.4th 461, 467; *People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419.)

During the mandatory supervision period, the offender is released into the community, under the supervision of the probation department, and the execution of the "unserved portion" of the offender's sentence is suspended pending the termination or revocation of the mandatory supervision period.  (§ 1170, subd. (h)(5)(B); *People v. Avignone* (2017) 16 Cal.App.5th 1233, 1240.)  The court may revoke or modify the mandatory supervision, by court order, in accordance with sections 1203.2 or 1203.3. (§ 1170, subd. (h)(5)(B).)  On May 22, 2018, the court revoked defendant's mandatory supervision and ordered him to serve the rest of his five-year term in county jail, thus lifting the suspension on the unserved portion of defendant's term.

3. Analysis

Whether defendant is entitled to the retroactive benefits of Senate Bill 136, and to have his two prison priors stricken, turns on whether the March 29, 2017 judgment imposing his split sentence was final on appeal, for *Estrada* purposes, when Senate

6

Bill 136 took effect on January 1, 2020. The People argue that the judgment was final on appeal 60 days after it was rendered because defendant did not appeal from the judgment. (See Cal. Rules of Court, rule 8.308(a).) Defendant claims that the judgment was not final after the time to appeal from the judgment expired; rather, it was modifiable, and was modified on May 22, 2018, when the court revoked defendant's mandatory supervision and ordered him to serve the rest of his five-year term in county jail. Defendant claims his current appeal from the May 22, 2018 revocation order, which was pending in this court when Senate Bill 136 took effect on January 1, 2020, means that he is entitled to the retroactive benefits of Senate Bill 136. As we explain, defendant is correct.

To date, at least three appellate courts have concluded in published decisions that a judgment imposing a split sentence is not final, for *Estrada* purposes, after the time to appeal from the judgment has expired, and that a defendant who appeals from a later order revoking his or her mandatory supervision is entitled the retroactive benefits of ameliorative legislation that took effect either prior to or during the pendency of the appeal from the revocation order. (*People v. Conatser* (2020) 53 Cal.App.5th 1223, 1227-1228 [First Dist., Div. Three], review granted Nov. 10, 2020, S264721 (*Conatser*); *People v. Martinez* (2020) 54 Cal.App.5th 885, 892-893 [Second Dist., Div. Six], review granted Nov. 10, 2020, S264848 (*Martinez*); *People v. Lopez* (2020) 57 Cal.App.5th 409, 412 [Sixth Dist.], review granted Jan. 27, 2021, S266016 (*Lopez*).) We find the reasoning of these decisions persuasive and agree with their conclusions.

As *Martinez* held: "[A] split sentence consisting of a county jail term followed by a period of mandatory supervision does not automatically become a final judgement of conviction for purposes of *Estrada* retroactivity when the time to appeal from the imposition of that sentence expires. Where, as here, the trial court subsequently revokes supervision and the Legislature enacts an ameliorative statute prior to or during the pendency of an appeal from the revocation order, the defendant is entitled to seek relief under the new law." (*Martinez*, *supra*, 54 Cal.App.5th at p. 891.) The *Martinez* court relied extensively on Supreme Court precedent, including *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*) and *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), each of which dealt with the finality of judgments granting probation. (*Martinez*, *supra*, 54 Cal.App.5th at pp. 892-893.) It is instructive to compare judgments imposing split sentences to judgments granting probation. As the cases demonstrate, neither type of judgment is final when imposed because the sentence it imposes can be modified pending the expiration of the probationary or mandatory supervision period.

As explained in *Chavez*, *supra*, 4 Cal.5th 771 at p. 781: " '[P]robation' " is statutorily defined as " 'the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer.' " (See § 1203, subd. (a).) "[N]either forms of probation— suspension of the imposition of sentence or suspension of the execution of sentence— results in a final judgment. In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him].' [Citation.] In the case where the court suspends execution of

sentence, the sentence constitutes 'a judgment provisional or conditional in nature.' [Citation.]  The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation.  [Citation.]  Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer:  the period of probation and the time thereafter." (*Chavez*, at p. 781.)

Indeed, the "criminal action," and thus the trial court's jurisdiction to impose a final judgment, "continues into and throughout the period of probation—when the court may still punish the defendant—but expires when [the probation] period ends."  (*Chavez*, *supra*, 4 Cal.5th at p. 784.)  It is irrelevant that section 1237 deems an order granting probation "a 'final judgment' " for the purpose of taking an appeal.  (*Chavez*, at p. 786.) Under our Supreme Court precedents, "such an order" has only "limited finality" and " 'does not have the effect of a judgment for other purposes.' " (*Ibid*.)

Relying on *Chavez* and other precedents, our Supreme Court in *McKenzie* held that a judgment suspending the imposition of sentence and placing the defendant on probation is not final, for *Estrada* purposes, on an appeal from a later order revoking the probation and imposing sentence. (*McKenzie*, *supra*, 9 Cal.5th at pp. 46-48.)  Like the *Martinez* court, we find "no reason to depart" from the principles discussed in *Chavez* and *McKenzie* "in a case involving mandatory supervision." (*Martinez*, *supra*, 54 Cal.App.5th at pp. 892-893.)  As *Martinez* explained:  "Mandatory supervision is 'akin to probation.' [Citation]  During the supervision period, the defendant is 'supervised by the county probation officer in accordance with the terms, conditions, and

procedures generally applicable to persons placed on probation,' including those used to revoke or modify the terms of supervision. (§ 1170, subd. (h)(5)(B); see §§ 1203.2, 1203.3.) The applicability of these procedures and the myriad outcomes they permit demonstrate that mandatory supervision, like probation, is conditional or provisional in nature." (*Martinez*, at p. 893.) In other words, "[t]he ongoing ability to change a sentence is fundamentally inconsistent with the proposition that sentencing is complete, as it must be to create a final judgment. This situation is analogous to a grant of probation which . . . is not a final judgment for retroactivity purposes." (*Lopez*, *supra*, 57 Cal.App.5th at p. 416.)

Thus, we reject the People's claim that a judgment imposing a split sentence is final on appeal, for all purposes, after the time to appeal from it has expired. Rather, when, as here, a court revokes the mandatory supervision portion of a split sentence, and an ameliorative statute becomes effective before or during the pendency of the defendant's appeal from the revocation order, the defendant is entitled to seek relief under the new law. (*Martinez*, *supra*, 54 Cal.App.5th at p. 889.)

We therefore strike the two one-year terms imposed for the two prison priors from defendant's aggregate five-year sentence. And, because the court imposed the maximum possible sentence—the upper term of three years—on defendant's conviction for possessing a cane sword (§ 20510), it is unnecessary to remand the matter for the court to exercise its sentencing discretion anew on this conviction. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772-773; *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

B. *Defendant's Other Claims of Sentencing Error*

    1.  <u>Remand for an Ability to Pay Hearing Under *Dueñas*[6]</u>

Defendant claims the matter must be remanded with directions to the trial court to conduct an ability to pay hearing and determine whether he has a present ability to pay the $300 restitution fine (Pen. Code, § 1202.4, subd. (b)) and $70 in court assessments (Pen. Code, § 1465.8; Gov. Code, § 70373) that the court imposed on March 29, 2017. (*Dueñas*, *supra*, 30 Cal.App.5th 1157.)

*Dueñas* held that due process principles require trial courts to conduct an ability to pay hearing and "ascertain a defendant's present ability to pay" before it may impose court facilities and court operations assessments. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1168.) *Dueñas* further held that due process principles require trial courts to stay the execution of any restitution fine, including a minimum statutory $300 restitution fine on a felony conviction (§ 1202.4, subd. (b)(1)), "unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay

---

    [6] *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

the restitution fine." (*Dueñas*, at pp. 1164, 1172.)[7]

On appeal, claims of *Dueñas* error are not prejudicial if the record shows that they are are harmless beyond a reasonable doubt—that is, if the record shows that the defendant has the present ability to pay the challenged restitution fine and assessments, or will be able to pay the fine and assessments over time. (*People v. Jones* (2019) 36 Cal.App.5th 1028; *People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1075.)

Here, the record does not show that defendant has the ability to pay the $370 sum, either presently or over time. On March 29, 2017, the court found that defendant was unable to pay his court-appointed counsel fees, given his claim that he was "disabled" and his description of himself as a "a zero income person." He told the court that he was in the process of applying for social security disability benefits, and he did not know the amount of benefits, if any, that he would receive. Then, on May 22, 2018, defendant told the court that he had a "medical condition," "another fracture," and "a lot of things going on, my heart and my back." Pending a decision by our Supreme Court overruling *Dueñas*,[8] we remand the matter to the trial court to conduct an ability to pay hearing, and

---

[7] We observe that several courts have criticized *Dueñas* as having been wrongly decided. (E.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067-1068; *People v. Adams* (2020) 44 Cal.App.5th 828, 831.) In *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, our Supreme Court is currently reviewing two questions that lie at the heart of *Dueñas*: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?" (*People v. Kopp* (Nov. 13, 2019, S257844) 2019 Cal. Lexis 8371.)

[8] See footnote 7, *ante*.

to strike the $300 restitution fine and $70 in court assessments, unless the court finds that defendant is or will be able to pay them.

2. The $41 Crime Prevention Fee Must Be Stricken as Unauthorized

Defendant next claims, and the People concede, that the $41 crime prevention fee that the court imposed on March 29, 2017, must be stricken because it was unauthorized. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [claims of unauthorized sentencing error may be raised at any time].)  We agree.

Under section 1202.5, subdivision (a), courts are required to impose a $10 crime prevention fee on a defendant who is convicted of a theft-related offense listed in the statute.  The court may also impose charges and penalties related to the $10 fine.  (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373-1374.)  Here, the $41 crime prevention fee was unauthorized because defendant's conviction for possessing a cane sword (§ 20510) is not among the offenses listed in section 1202.5, subdivision (a).  (See *People v. Jefferson* (2016) 248 Cal.App.4th 660, 663.)  Thus, we strike the $41 crime prevention fee from defendant's sentence.

3. The $30 Administrative Fee on the Restitution Fine Was Properly Imposed

Defendant claims that a 10 percent, or $30, administrative fee on his $300 restitution fine must be stricken because it appears in the court's March 29, 2017 minute order but does not appear in the court's March 29, 2017 oral pronouncement of judgment.  As a general rule, the court's oral pronouncement of judgment controls when there is a discrepancy between the court's minute order and the oral pronouncement. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880.)  The People counter that the $30

13

fee was properly imposed because it was "mandatory" under section 1202.4, subdivision (*l*). We agree that the $30 fee was properly imposed.

Section 1202.4, subdivision (*l*), provides as follows: "At its discretion, the board of supervisors of a county may impose a fee to cover the actual administrative cost of collecting the restitution fine, not to exceed 10 percent of the amount ordered to be paid, to be added to the restitution fine and included in the order of the court, the proceeds of which shall be deposited in the general fund of the county." The March 29, 2017 minute order states: "Pay a restitution fine pursuant to [section] 1202.4, plus 10 percent, as ordered by the court and comply with court ordered payment schedule, $330."

In light of section 1202.4, subdivision (*l*), there is no discrepancy between the court's March 29, 2017 oral pronouncement of judgment and its March 29, 2017 minute order, with regard to the $30 fee. Rather, the two are entirely consistent. (*People v. Contreras*, *supra*, 237 Cal.App.4th at p. 880 [a record in conflict with the court's oral pronouncement will be harmonized if possible].)

Defendant has also not shown that the $30 fee was unauthorized. Specifically, he has not shown that the San Bernardino County Board of Supervisors did not require the county's superior courts to impose a 10 percent administrative fee on restitution fines. (§ 1202.4, subd. (*l*).) Thus, we affirm the order imposing the $30 fee. We also note that, in contrast to his claim that he is unable to pay the $300 restitution fine, defendant does not challenge the court's imposition of the $30 fee on the restitution fine on the ground he is unable to pay the $30 fee. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1172.)

4.   Correction of Court Records Regarding The $300 Revocation Fine

On March 29, 2017, the court imposed a $300 mandatory supervision revocation restitution fine but stayed the fine pending defendant's successful completion of mandatory supervision.  (§ 1202.45, subd. (b).)  On May 22, 2018, the court terminated defendant's mandatory supervision.  But the court's May 22, 2018 minute order indicates that the court lifted the stay on a $330, not a $300, mandatory supervision revocation restitution fine.

The parties, and we, agree that the court's May 22, 2018 records must be corrected to show that the court lifted the stay on a $300, rather than a $330, mandatory supervision revocation restitution fine.  When a defendant is convicted of a crime and is subject to mandatory supervision under section 1170, subdivision (h)(5)(B), the court is required to impose a mandatory supervision revocation restitution fine "in the same amount" as the restitution fine that it imposed under section 1202.4, subdivision (b).  (§ 1202.45, subd. (b); *People v. Butler* (2016) 243 Cal.App.4th 1346, 1351.)

The record shows that, on March 29, 2017, the court imposed a $300 restitution fine, not a $330 restitution fine.  When the court's May 22, 2018 minute order was prepared, it appears that the clerk of court may have conflated the $30 administrative fee on the $300 restitution fine, which was imposed pursuant to section 1202.4, subdivision (*l*), with the $300 restitution fine itself, which was imposed pursuant to section 1202.4, subdivision (b).  Courts have inherent authority to correct clerical errors in court records.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  On remand, we direct the court to prepare a supplemental minute order, showing that, on May 22, 2018, the

15

court lifted the stay on a $300, not a $330, mandatory supervision revocation restitution fine.  Here too, defendant does not challenge the May 22, 2018 order lifting the stay on the $300 mandatory supervision revocation restitution fine on the ground he is unable to pay the fine.  (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1172.)

## IV.  DISPOSITION

The $41 crime prevention fee and the two one-year prison priors are stricken from defendant's aggregate five-year sentence.  The matter is remanded with directions to the superior court to conduct an ability to pay hearing under *Dueñas*, *supra*, 30 Cal.App.5th 1157, to determine whether defendant is able to pay the $300 restitution fine and $70 in court assessments, either presently or over time.  If the court determines that defendant is or will be unable to pay all or part of the $300 restitution fine, the court is directed to stay that portion of the $300 restitution fine.  If the court determines that defendant is or will be unable to pay all of part of the $70 in court assessments, the court is directed to strike that portion of the $70 in court assessments.  The court is further directed to prepare a supplemental minute order, showing that, on May 22, 2018, the court lifted the stay on a $300, not a $330, mandatory supervision revocation restitution fine, and that the $41 crime prevention fee and the two-one-year prison priors have been stricken from defendant's aggregate five-year sentence.  In all other respects, the May 22, 2018 order

16

revoking defendant's mandatory supervision, and lifting the stay on his previously imposed five-year sentence (as reduced by this court's direction), is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

MILLER _____
Acting P. J.

SLOUGH _____
J.

17