Filed 10/1/25  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DESTINY JUANAE MARIE JONES et al.,<br><br>        Defendants and Appellants. | C101944<br><br>(Super. Ct. Nos. 62-190657B,<br>62-190657C) |

Codefendants Destiny Juanae Marie Jones and Kenterra Marie Larkins targeted the retailer Lululemon and, over two days, robbed its stores in the Sacramento area.  Not long after they walked out of the Roseville store with bags full of stolen merchandise, police detained them and recovered over $15,000 worth of merchandise.  Jones and Larkins ultimately pled no contest to grand theft and organized retail theft and the trial court sentenced each of them to a prison term.  On appeal, they each raise several challenges to their sentence, contending the court abused its discretion in denying probation and failing to impose a split sentence involving supervision and instead

1

erroneously imposed the middle term. We disagree with their contentions and thus affirm.

PROCEDURAL BACKGROUND

In 2023, the prosecutor charged Larkins and Jones[1] with grand theft of property (Pen. Code, § 487, subd. (a)[2] (counts one (as to both), five & seven (as to Larkins only)), organized retail theft (§ 490.4, subd. (a)(1) (counts two (as to both), four & six (as to Larkins only)), fraudulent possession of personal identifying information of 10 or more victims (§ 530.5, subd. (c)(3) (count three)), and possession of burglary tools (§ 466 (count eight)).

Pursuant to a negotiated plea bargain, Larkins pled no contest to grand theft and organized retail theft (counts one & two) and Jones pled no contest to organized retail theft (count two). Under the terms of the agreement, the remaining counts were dismissed pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. In addition, Larkins understood the sentence "lid" to be two years eight months, and Jones understood her sentence lid to be two years.

A. Factual Basis

The following served as the factual basis for the plea, to which Larkins and Jones each stipulated. "On or about October 25, 2022, in Placer County, the Defendants Kenterra Marie Larkins, Areyana Nina Hill and Destiny Juanae Marie Jones in violation of Penal Code Section 487, did willfully and unlawfully take possession of property owned by Lululemon without the owner's consent.

---

[1] Case No. 62-190657C is associated with Larkins and case No. 62-190657B is associated with Jones. The prosecutor also charged codefendant Areyana Hill; she is not a party to this appeal.

[2] Undesignated statutory references are to the Penal Code.

"And when they moved and took possession of the Lululemon merchandise, they had intended to permanently deprive Lululemon of that material. The value of the stolen merchandise for that date exceeded $950. As per Defendants . . . . [¶] Kenterra Marie Larkins and Destiny Juanae Marie Jones on or about October 25, 2022, in Placer County, those two defendants in violation of Penal Code Section 490.4 did willfully and unlawfully act in concert with one or more persons to steal merchandise from one or more merchant premises with the intent to sell, exchange, return the merchandise for value. And that this conduct was committed on more than one occasion within a 12-month period with the stolen goods exceeding $950.

"More specifically, Your Honor, as occurring on October 25th of 2022, in Placer County, these three defendants that are before the court today entered the Lululemon at the Galleria [mall]. They entered the store together, grabbed approximately 129 leggings valued at $15,222. [¶] They then left the mall and went in a car together that was registered to Defendant Larkins. The car was subsequently stopped. All of the merchandise was recovered, and all three were passengers within the vehicle.

"Moreover, Your Honor, as to Defendant Jones and Larkins for the 490.4, there is also evidence that the day prior in Sacramento on October 24th of 2022, both Defendant Jones and Defendant Larkins were identified as going into the Lululemon at—in Sacramento and stealing items from that store as well."

B. Sentencing Hearing

The probation department prepared a pre- and postplea report for both Jones and Larkins. As to each defendant, a probation officer initially indicated that probation was a viable option but, in the postplea reports, a different officer ultimately recommended the court sentence each defendant to a term of two years; the officer opined that section 654 applied to Larkins's offenses.

During the sentencing hearing, an organized retail crime investigator for Lululemon testified that one of the factors leading to the apprehension of Jones and

3

Larkins was the use of technology that is expensive and represents an additional loss to the company. He also described "what happens in a store when these kinds of incidents take place. There is four to five people that come in, full masks. They make their way through the store. Pull out trash bags in front of customers during business hours. It's very detrimental to a business as a whole. It makes people feel unsafe in a business. It makes the employees feel unsafe."

C. Jones's Sentencing

The prosecutor submitted a sentencing memorandum, to which she attached two exhibits: text messages between Jones and Larkins in which they planned retail thefts and photos of the event leading to the instant charges. During the sentencing hearing, the prosecutor stated that although she initially thought a two-year sentence was too harsh, the text messages between Jones and Larkins indicated they planned to "hit" more stores in the Bay Area and planned to sell their goods to a "fence" who would resell the stolen merchandise. The prosecutor opined that this was not a situation where two young women were caught up in incidents of peer pressure. Rather, the thefts were something they spoke about in a cavalier manner and with sophistication, including indicating knowledge of when less security would be present at different stores. The prosecutor further argued that the submitted photos showed "the brazenness of these women to go in and carry out large amounts of merchandise often in front of multiple employees. At least on two of the videos that I watched there were children in the store when all of this was going on." Finally, the prosecutor noted, "we also know they were carrying pepper spray I believe at the Sacramento one."

Defense counsel responded that Jones was "quite young" and was "working on herself." Jones herself expressed remorse and noted that she was young and has worked hard to change her life around.

In sentencing Jones, the trial court made the following comments:

"In considering whether or not . . . probation is appropriate, the Court notes the defendant is eligible for probation; however, the Court must consider Rule 4.414, the criteria affecting probation. The Court also considers some of the factors in aggravation and mitigation in relation to considering whether or not probation is appropriate.

"In considering the facts related to the crime, for this particular case as related to this particular defendant, the nature of this crime compared to other instances is exceedingly more serious than other instances. This is not a simple grand theft. This is not a simple grand theft of $1,000. This is not a shop lifting case. This is an organized, planned, sophisticated assault, not only on the store but assault on the people in the store who are subject to being hurt when such an event occurs and such a crime occurs. The Court is concerned the seriousness of this includes the fact that there were children present, so the nature and seriousness and circumstances of this crime compared to other instances of theft crimes or even the same crime is quite serious.

"In addition, the Court considered whether or not the defendant was armed with or used a weapon. The Court also considered the monetary loss. The probation report indicates that the monetary loss was $33,276; however, it appears that between the two stores that there is substantial other losses, so that's a substantial loss.

"The Court has also considered whether Ms. Jones was an active or passive participant. Based on all available information, she was an active participant, not only an active participant, but a participant in the planning of the matter in terms of the sophistication and then whether or not the crime involved sophistication. Clearly by all available information, it did. The Court also considered -- and I note in terms of the facts, just the fact that they were so quick demonstrates the sophistication of the crime.

"Related to the facts related to the defendant, certainly she is willing to comply with probation. Certainly her ability to comply appears she may have the ability to comply with probation, and in addition minimal, no criminal record of note.

Notwithstanding the mention in the probation report about the prior arrests, no convictions.

"The Court has also considered the defendant's life in terms of whether or not there is an impact there in terms adverse consequences. But in evaluating whether or not probation is appropriate, the Court considered all of those factors, but also considered, again, any factors in aggravation and mitigation as relates to whether or not probation is appropriate. And, again, I get back to the question of sophistication, the planning involved in such an event, the loss, the great loss, and whether or not the conduct involved violence, and the fact that there are people present. Certainly that was a factor the Court has considered. But the Court also considered that factor in mitigation relating to the lack of record and her youth. Nineteen at the time of the event.

"I don't know that I could say it any better than probation, because when I balance all of those factors to determine whether or not probation is appropriate, probation at page 16 of her report line 1 states, quote, 'The magnitude of the defendant's crimes cannot be overlooked. She chose to conspire with multiple codefendants to deprive the victim of over $15,000 worth of merchandise. The defendant and codefendants' brazen act of theft put store employees and innocent bystanders'—innocent bystanders— 'including children at risk of harm during the quick escape and get away.' That's the primary thing to focus on.

"I have considered the defendant's remorse as well expressed here today. Obviously different, but expressed here today. And also, as probation did, I give credit to her lack of criminal history, but when I weigh and balance all those factors, the factors that weigh in favor of denying probation are greater, and so I would decline and I would deny probation based on that assessment.

"Turning now to the question of whether or not—what term, what 1170 sentence the Court should impose, the Court has in this particular case—because the People agreed to a lid of two years, the maximum the Court can impose is the middle term of two years.

6

Of course the Court could also impose 16 months.  Then the Court will have to decide whether or not mandatory supervision is appropriate, but in this particular case based on the factors that I've already mentioned—I won't restate them here—based on all of the factors that the Court considers in determining the appropriate term, again, the Court has considered the information obviously in the probation report, but in terms of the middle term, the middle term is appropriate; after considering Rules of Court 4.421 and 4.423, the middle term is appropriate.

"So for a violation of Penal Code section 490.4(a)(1) as charged in Count Two, the defendant will be sentenced pursuant to 1170(h) to the county jail for the middle term of two years, and the Court will designate that as the principal term."

After the court imposed the sentence, the court asked the parties if there was anything further that they wanted to say and defense counsel responded:  "No, Your Honor.  Thank you."

D. Larkins's Sentencing

The prosecutor submitted a sentencing memo requesting imposition of a two-year eight-month sentence, arguing that Larkins's repeated participation in a sophisticated organized retail theft crew warranted the sentence lid.  As support, the prosecutor attached several photos of the incident and text messages between Larkins and Jones in which they planned retail thefts and communicated how to offload the stolen materials for profit.

With respect to Larkins, the trial court provided the following reasoning.

"With respect to whether or not probation is appropriate, I have considered that, and so that's what I'm going to talk about now.  Again, you are eligible for probation. And in considering whether or not probation is appropriate, I considered the Rules of Court 4.414, and I've also considered any factors in aggravation or mitigation that factor in to whether or not probation is appropriate.

"In considering this, because there is a dispute about the pepper spray issue, I am going to set that aside. I'm not considering that for purposes of your sentence, but I am considering the seriousness of this offense, which is Rule 4.414(a)(1), the nature, the seriousness, the circumstances of the crime as compared to other instances. You have already heard me say that this is not a simple theft. It is undisputed according to the arguments that I heard today that you were involved in stealing over $48,000 worth of merchandise; that it was not an opportunistic crime. It was a sophisticated crime. It was planned. It was serious. Again, it was very brazen. There were children present. The public was present. As I said before, it was a full-on assault with several people on this store open to the public. It would be no different than going in to anyplace open to the public with a number of people and stealing. This was a very, very serious crime. There is no doubt about that based on all available information.

"In addition, when I have to consider whether or not to grant probation, I have to consider the amount of loss. The probation report for you says the loss was $33,276, but as set forth here today, the loss appears to be $48,496. That's a significant amount of loss for anyone.

"I also have to consider and I have considered whether you were an active or passive participant. Based on all available information, I can't overlook that you were active. You were an active participant. You were involved in the planning. Involved in—as it was mentioned earlier today, October 25th wasn't the only time. There was all this planning that led up to this event on October 25th. Apparently there were other events. But in terms of the separation of that conduct, that planning is significant in and of itself. The actual act of going into Lululemon on October 25th was serious.

"Part of the evaluation is whether or not the crime was sophisticated or professional. In this case you wore a mask. There was a duffle bag. Carrying garbage bags. There were many codefendants. Clearly you knew exactly where you were going

because your direction was in and out, so clearly it was sophisticated and it was not opportunistic.

"In terms of the facts relating to you, I have to consider in terms of granting probation, and clearly you are willing to comply with probation. Clearly you demonstrated over the course of the pretrial proceedings that you can comply because you complied with these terms. You have the familial support. You have no criminal history other than those DMV violations, but no criminal history. You have training and education. Certainly there is going to be an effect on your child with imprisonment. Certainly there is [*sic*] adverse consequences related to the felony conviction. At the same time, you've expressed remorse. I think your remorse is genuine. But when I think about how much potential you have and I think about the decisions you've made in the past, I also have to weigh and balance that with protecting society, punishing you, isolating you for a time period. I have to weigh and balance all of those things together.

"In terms of the factors in aggravation as they relate to whether or not I grant probation, I considered all those same things in terms of the sophistication, the planning, the taking of great monetary value, the vulnerability of the victims, your lack of criminal record. You were 22 at the time of the offense. You are 24 now. I've considered all of those factors.

"After a full consideration I weigh and balance all of those factors, it's the seriousness of your conduct. The seriousness of the planning, the brazen conduct, the amount of money that was at stake, the people you put in a place that you would not have been wanting to be a victim of such a crime. I know that based on everything I read about you. You have it in you to be better. You will be better, but right now I have to deal with what decisions you made in the past. Based on all of that information, I am going to decline to grant you probation. I'm going to deny probation."

The trial court sentenced Larkins to the aggregate term of two years eight months as follows: the middle term of two years on count one plus eight months, one-third the

middle term, on count two. The court subsequently asked defense counsel whether there was anything else to address and counsel only asked for a delayed date to report for sentencing.

Each defendant filed a notice of appeal.

## DISCUSSION

### I

### *Jones's Midterm Sentencing*

Jones contends the trial court erred in imposing the middle term, as her youth was a factor in mitigation requiring imposition of a presumptive low term pursuant to section 1170, subdivision (b)(6). Jones further contends the court abused its discretion in imposing the middle term because the aggravating factors are not supported by the record. We disagree.

"After a sufficient factual basis to support the circumstances in aggravation or mitigation is found, the court enjoys broad discretion in its sentencing determination." (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 205.) We review the court's sentencing decisions for an abuse of discretion. (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) "That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] The court abuses 'its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' " (*Hilburn*, at p. 206.) The court's " ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) In other words, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid*.)

Section 1170, subdivision (b)(1) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided." California Rules of Court, rule 4.420(d)[3] provides: "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial."

Section 1170 also contains a presumption in favor of the lower term if certain mitigating circumstances were a contributing factor in the commission of an offense, including if the defendant is younger than 26 years old (or was at the time of the crime). (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765; § 1170, subd. (b)(6)(B); see also rule 4.423(b)(6) [circumstances in mitigation include when a defendant is under 26 years of age or was under 26 years of age when the offense was committed].) Rule 4.421 sets forth circumstances in aggravation that a court may consider in sentencing if a presumptive lower term factor contributed to an offense. Under those circumstances, the trial court may impose the middle term only if it finds that the aggravating circumstances in rule 4.421 outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§ 1170, subd. (b)(6).)

A. Lower Term

Jones contends the trial court erred in considering her youthfulness as a "regular or normal mitigating factor as opposed to being a *super mitigant*" that requires imposition of the low term. She contends that because the record establishes this super mitigant, she

---

[3] Undesignated rule references are to the California Rules of Court.

was not required to specifically request consideration of the low term and the trial court's failure to impose it indicates the court misunderstood its statutory obligation. The People contend Jones forfeited this argument by failing to mention section 1170, subdivision (b)(6) during the sentencing hearing and, in the alternative, that the record does not show Jones's youth was a contributing factor to the charged offense. According to the People, the presumption that the low term should be imposed was never triggered. We agree with the People.

First, Jones forfeited this claim by failing to ask the trial court to impose a lower term sentence pursuant to section 1170, subdivision (b)(6). (*People v. Achane* (2023) 92 Cal.App.5th 1037, 1043-1044.) "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) Such an objection must fairly inform the trial court and the prosecution of the basis for the objection so that the prosecution can respond appropriately, and the court can make an informed ruling. (See *People v. Partida* (2005) 37 Cal.4th 428, 434-435 [interpreting the objection requirement in Evid. Code, § 353]; cf. *People v. De Soto* (1997) 54 Cal.App.4th 1, 10 [claim forfeited where defendant "raised no specific objections at the time of sentencing," so trial court lacked "a genuine opportunity to correct any errors it may have made"].) "A trial court's decision whether to apply [section 1170, subdivision (b)(6)] . . . depends on both factual determinations and the exercise of discretion," which means that the defendant must raise the issue in the trial court and develop a record in order to raise the issue on appeal. (*Achane*, at p. 1044.) Jones did not do so here, thus she has forfeited the issue.

Even if not forfeited, we disagree Jones is entitled to relief. Section 1170, subdivision (b)(6) only applies if a defendant's youth was "a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A).) It is not enough to show that the defendant was under 26 years old at the time of the underlying offense. (*People v.*

*Fredrickson* (2023) 90 Cal.App.5th 984, 992.) While it may seem reasonable to presume a defendant's youth is a contributing factor whenever a youth commits a crime, the Legislature opted to require a finding of causation as to all the circumstances in section 1170, subdivision (b)(6), and "we have no authority to rewrite the statute." (*Fredrickson*, at p. 993, fn. 7; see *In re I.A.* (2019) 40 Cal.App.5th 19, 23 [appellate courts may not rewrite unambiguous statutes].)

Although all the parties acknowledged Jones was young—only 19 years old at the time of the offense—neither the probation report nor defense counsel suggested that Jones's youthfulness contributed to the commission of the offenses in this case. On appeal, Jones claims the record shows that her mother had health issues that required Jones to become a provider at a young age, but this also fails to explain how youthfulness was a contributing factor in the offense. Indeed, the evidence indicates she engaged in sophisticated planning and reflection rather than in impetuous behavior that is often a hallmark of youth. (See *People v. Franklin* (2016) 63 Cal.4th 261, 283 [Among the " 'hallmark features' " of youth are " 'immaturity, impetuosity, and failure to appreciate risks and consequences' "].)

B. Middle Term

Jones next contends the trial court abused its discretion by imposing a middle term sentence because the aggravating factors were not supported by the evidence and did not outweigh those in mitigation. To the extent she contends the court failed to properly weigh the aggravating and mitigating factors, she has forfeited this claim by failing to raise the issue at sentencing. As a general rule, "all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852.)

With respect to Jones's contention that the court's decision was not factually supported, we note that "[t]he plain language and statutory context of Penal Code section

13

1170, subdivision (b) are clear the Legislature did not intend to impose evidentiary or proof requirements or restrictions on the imposition of a middle term sentence. (Compare Pen. Code, § 1170, subd. (b)(1) with Pen. Code, § 1170, subd. (b)(2), (6).) In imposing a middle term sentence, all that section 1170 requires is that the court apply the Judicial Council's sentencing rules and that the court state the facts and reasons for imposing the middle term on the record at the time of sentencing. (Pen. Code, § 1170, subds. (a)(3), (b)(5), (c); see Cal. Rules of Court, rule 4.401 et seq. [felony sentencing rules].)" (*People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1223-1224.)

Jones does not challenge the trial court's findings that she took part in a sophisticated organized retail theft or that it resulted in a substantial loss for the company. (See rule 4.421(a)(8) & (a)(9).) Because under rule 4.420 the court was not required to rely on *any* "aggravating" factors when choosing between the middle and lower terms, it reasonably could have relied on none or on these factors alone to impose a midterm sentence. (Cf. *People v. Hall* (1994) 8 Cal.4th 950, 964 [where trial court's consideration of circumstances in aggravation is permissible under the traditional sentencing guidelines set forth in the rules, the trial court did not err in relying upon that circumstance in aggravation].)

Jones acknowledges that one valid factor may support the middle term sentence. However, she contends the record shows the trial court's primary consideration in imposing the middle term was the danger the court *speculated* to be present during the commission of the offense. She contends the trial court had no support for its findings that: this was an *assault* with a risk of harm to others, that children were present or that Jones was armed with pepper spray.

First, we agree with the People that there is no indication from the court's ruling that it considered Jones armed with pepper spray as a factor supporting the middle term; the court made no such finding.

14

Next, she claims there was no support for the court's concern that children were present during the theft. Yet the prosecutor represented that she watched two videos of the theft that showed children present. This statement provides sufficient evidentiary support. Jones did not object to the prosecutor's representation of the evidence at the sentencing hearing and does not now offer any reason why the trial court could not lawfully consider that statement, thus forfeiting any admissibility claim. (See *People v. Scott* (1994) 9 Cal.4th 331, 353, 356 [complaints about the manner in which the trial court exercises its sentencing discretion, including "cases in which the stated reasons allegedly do not apply to the particular case" are subject to forfeiture].) Because "[t]he court may consider . . . statements in aggravation or mitigation submitted by the prosecution, . . . and any further evidence introduced at the sentencing hearing" the court's reliance on such evidence was not improper. (§ 1170, subd. (b)(4).)

Finally, we disagree with Jones's interpretation of the trial court's comment that this was "an organized, planned, sophisticated *assault*, not only on the store but *assault* on the people in the store who are subject to being hurt when such an event occurs." (Italics added.) Contrary to Jones's contention, this statement does not constitute a finding that anyone was harmed or attacked by Jones. Rather, it demonstrates consideration of the fact that other people were present and that such an event has the possibility to result in harm of others. Indeed, Jones herself acknowledges there was potential for harm. (See *People v. Robins* (2020) 44 Cal.App.5th 413, 419 [acknowledging a shoplifting may turn "into a robbery when the thief is confronted by a LPO [loss prevention officer], and the thief assaults the LPO in an attempt to get away"].) The Lululemon investigator testified that employees and shoppers are often scared in these types of cases and, the prosecutor submitted photos of the theft in this case that confirmed the presence of others. While Jones contends it was improper to consider the *possibility* of such harm, such consideration is consistent with the sentencing goal of providing protection to society. (Rule 4.410(a)(1).)

15

In sum, the record establishes the court carefully considered the relevant aggravating and mitigating circumstances in reaching its determination as to sentencing. This decision was an appropriate exercise of discretion by the trial court and Jones fails to persuade us the court operated out of the bounds of reason in making its conclusion.

II

*Larkins's Consecutive Sentences*

Larkins contends that the court abused its discretion when it imposed a consecutive term for count two because both offenses arose from the same operative facts and were not predominantly independent of each other. We disagree.

A. Additional Background

During the sentencing hearing, the prosecutor argued that consecutive sentences were appropriate under section 654 because the elements for organized retail theft and grand theft are different and that organized retail theft encapsulates "a larger scheme or conspiracy, working in concert with others over 12 months." Defense counsel disagreed, arguing the two offenses involved the same course of conduct and that one cannot commit an organized retail theft offense "without actually completing the theft."

In imposing consecutive sentences on counts one and two for Larkins, the trial court made the following comments.

"Again, it comes back down in your particular case to we have two separate crimes, because we have the crime that you committed on the 25th.

"When I look back at the plea transcript, I looked at the statement of facts and proposed stipulated facts. They were definitely delineated as two separate things in the plea transcript. One was the amount of work and sophistication and planning you did with the other people to steal the merchandise, and then it was committed over a course of a period of time. Then the second separate offense was the one committed on the 25th at Lululemon, and so those two things.

16

"The other piece is where probation talks about this wasn't an isolated incident. This wasn't a situation where you were just hanging out with friends and somebody said, "Hey, let's go do this." No. You had thought about it. You had time to reflect. Days went by. You had time to reflect. On any of those occasions you could have said, "No, I'm not going to do this." You went through with your plan and continued to do it. Those are the things that factor in to my decision in terms of what sentence to impose.

"So as a result, I am going to impose for a violation of Penal Code section 487(a) a midterm of two years. That's going to be the principal term. In terms of considering, I have considered the totality of the circumstances and the factors set forth in California Rule of Court 4.425 related to the subordinate term and whether or not I'm going to sentence you consecutive or concurrently. I also carefully considered the circumstances, the factors set forth in California Rule of Court 4.424 and Penal Code section 654, and I am going to make a specific finding that 654 doesn't apply, not only based on how the evidence was laid out in terms of the stipulated facts for purposes of the plea, but the information contained in the report as I previously said."

B. Analysis

Before a trial court determines whether to impose a concurrent or consecutive sentence, it must determine whether section 654 applies. (Rule 4.424.) Section 654 provides in part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "When a defendant is convicted of two or more offenses for which section 654 prohibits multiple punishment, the trial court must impose sentence for one of them and stay imposition of sentence for the others." (*People v. Kramer* (2002) 29 Cal.4th 720, 722.) If section 654 does not apply, and there are no other statutory restrictions, the trial court has broad discretion to impose concurrent or consecutive sentences. (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458-459.)

17

In her opening brief, Larkins does not specifically contend the trial court erred in finding section 654 inapplicable. Indeed, she only mentions section 654 to note that the probation department opined that it should apply. In her reply brief, Larkins contends that one of her "strongest arguments" is that the probation department found that section 654 applied and contends without citing any authority that the court's finding that section 654 did not apply was not supported by the record. Because any challenge to the trial court's determination that section 654 does not apply is not properly set forth and developed on appeal, this argument is forfeited. (See *People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 [" 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' "]; see also rule 8.204(a)(1)(B) [appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument"].) Accordingly, we limit our consideration of Larkins's argument to whether the court abused its discretion in imposing consecutive sentences under rule 4.425.

When a person is convicted of two or more crimes, the sentences "shall run concurrently or consecutively." (§ 669.) "It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977, quoting *People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.)

Rule 4.425 sets forth some of the factors used in determining whether to impose consecutive or concurrent sentences. Under rule 4.425(a), these include: "(1) The crimes and their objectives were predominantly independent of each other; [¶] . . . [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." The court may also consider any circumstances in aggravation or mitigation in deciding

whether to impose consecutive rather than concurrent sentences, except facts "used to impose the upper term," "used to otherwise enhance the defendant's sentence," or that are "element[s] of the crime." (Rule 4.425(b); see § 1170, subd. (b).) Therefore, rule 4.425 acts as a guideline for the trial court and not a requirement. (Rule 4.425 ["[f]actors affecting the decision to impose consecutive rather than concurrent sentences include . . ."]; see *People v. Calderon* (1993) 20 Cal.App.4th 82, 86-87 ["[the factors in rule 4.425] are guidelines, not rigid rules courts are bound to apply in every case"].)

"Only one criterion or factor in aggravation is necessary to support a consecutive sentence." (*People v. Davis* (1995) 10 Cal.4th 463, 552.) The court's finding that Larkins participated in a scheme that resulted in a "significant amount of loss" is an aggravating factor that justifies a consecutive sentence and is a factor Larkins does not challenge. (See rules 4.421(a)(9) & 4.425(b); *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1104 ["in determining whether to impose consecutive sentences, the trial court could have considered the same aggravating factors it had considered in deciding to impose the middle term"].) Thus, the sentencing decision was within the bounds of reason based on this fact alone.

Nevertheless, Larkins contends that consecutive sentences are not warranted because both of her convictions arose from the same incident in Roseville. The People counter that consecutive sentences were appropriately imposed because Larkins admitted this was not a "one time" incident; the factual basis included a stipulation that Larkins and Jones were identified as stealing items from the Sacramento Lululemon store the day prior. We agree with the People.

As charged and pled to here, Larkins committed organized retail theft by "[a]ct[ing] in concert with one or more persons to steal merchandise from one or more merchant's premises or online marketplace with the intent to sell, exchange, or return the merchandise for value." (§ 490.4, subd. (a)(1).) Larkins also committed grand theft when the "property taken [was] of a value exceeding nine hundred fifty dollars ($950)."

19

(§ 487, subd. (a).) Larkins further stipulated to the fact that she and Jones were identified as going into the Lululemon store in Sacramento the day before and stealing items. Thus, the factual basis establishes that Larkins engaged in an ongoing plan to work with Jones to steal merchandise from one or more marketplaces and, separately, that she walked into one of those marketplaces and actually stole items worth over $950. Contrary to Larkins's contention, the court's ruling was not improper and as a result, Larkins has not met her burden to show the trial court abused its discretion.

III

*Denial of Probation*

Larkins contends the trial court abused its discretion in failing to grant her probation. Jones joins her argument. We disagree.

"Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. (Pen. Code, § 1203.1.)" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) In granting probation, the court's primary considerations are: " 'the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; the loss to the victim; and the needs of the defendant.' " (*Ibid*., quoting § 1202.7.)

" 'A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner.' [Citation.] A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court

in the matter of denying or revoking probation.' " (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)

Larkins and Jones each contend probation was appropriate in light of their individual factors in mitigation, including the lack of a criminal history, the fact that this was a property crime and not one of violence, and the fact that they each had education and training, plans for the future and were willing to comply with the terms of probation. They contend that the court failed to give appropriate weight to public safety considerations mandated by section 1202.7 and did not articulate how granting probation would pose a danger to the community. They further contend that the court failed to properly consider that they would be able to pay off restitution earlier if on probation. The People respond that Larkins and Jones have failed to demonstrate the court abused its discretion when the record establishes that the court considered rule 4.414 and considered and weighed appropriate aggravating and mitigating factors.

Jones and Larkins forfeited these claims by failing to object during sentencing. (See *People v. Smith, supra*, 24 Cal.4th at p. 852.) At no time did either defense counsel object to, seek clarification on, or request to change the sentencing factors as stated by the court. Indeed, when asked by the trial court whether there was anything else to discuss after the court indicated its sentence, defense counsel for both Larkins and Jones replied in the negative. (See *People v. Sarmiento-Zuniga, supra*, 108 Cal.App.5th at p. 1222.)

Nevertheless, under the circumstances of this case, we cannot find that the trial court abused its discretion in refusing to grant probation. The trial court did not abandon its role as an impartial judicial officer as it considered the lack of criminal history, the arguments of counsel, and the reports and letters of support submitted at sentencing. The court gave a lengthy and reasoned explanation for its sentencing choice as to each defendant, specifically considering the amount of loss, the nature of the offense, factors regarding the needs of each defendant, and the public's safety. Weighing these factors

21

with additional factors in mitigation, the court ultimately opined that Larkins's and Jones's conduct was serious, brazen, resulted in a large amount of loss, and subjected the public to criminal activity that could have resulted in harm. Although one probation officer initially opined that probation may be a viable option as to both Larkins and Jones, another probation officer disagreed and, during sentencing, the court was not required to follow either recommendation in those reports. (*People v. Downey, supra*, 82 Cal.App.4th at p. 910; accord *People v. Warner* (1978) 20 Cal.3d 678, 683, superseded by statute on another ground as stated in *People v. Douglas* (1999) 20 Cal.4th 85, 92, fn. 6.) Contrary to Larkins's and Jones's claim, the court's decision does not exceed the bounds of reason, and we will therefore uphold it on appeal. (*Downey*, at pp. 909-910; see also *People v. Giminez* (1975) 14 Cal.3d 68, 72 [abuse of discretion is shown "whenever the court exceeds the bounds of reason, all of the circumstances being considered"].)

IV

*Refusal to Impose a Split Sentence*

Larkins contends, and Jones joins in the argument, that the trial court abused its discretion in failing to split her sentence to include a term of mandatory supervision pursuant to section 1170, subdivision (h)(5)(A). We disagree.

A. Additional Background

In declining to impose a split sentence for Larkins, the trial court made the following comments:

"Now, the next evaluation that I have to make is whether or not that I split the sentence or I suspend a portion of that sentence and place you on mandatory supervision for any portion of that sentence. And after a full consideration, I do find after considering Penal Code section 1170(h)(5)(a) and California Rule of Court 4.415, that I do find in the interest of justice that mandatory supervision is not appropriate. Again, for all the same reasons I set forth here today. Again, the Court—this is an amount of great taking. It was

22

sophisticated. It was planned. It was professional. It was brazen. There were vulnerable people. Again, I weighed and balanced all the information contained in the probation report, and I would decline to place you on mandatory supervision."

Jones's defense attorney requested that the trial court grant probation, stating "in the alternative some type of split sentence." In declining to suspend a portion of Jones's sentence and place her on mandatory supervision pursuant to section 1170, subdivision (h)(5)(A), the trial court made the following comments:

"The question now becomes whether or not the Court splits the sentence, and in determining whether or not to split the sentence pursuant to 1170(h)(5)(a) and Rule of Court 4.415, I have also considered whether or not to allow Ms. Jones to spend some time on mandatory supervision. And after a full consideration, again, I weigh and balance just the absolute seriousness of this offense, the people that were present that were put at risk, the vulnerability of the people, the sophistication, the planning, the organization, the value, the amount of money that was taken. This is not a simple theft case. This is a serious, significant case where the parties and the defendant should be very lucky that nobody was injured, that nobody was hurt, that nobody did anything to hurt anybody physically. When I weigh and balance all of those things, I would deny and decline. I find that in the interest of justice that mandatory supervision is not appropriate in this case pursuant to 1170(h)(5)(a) and Rule of Court 4.415 for all of the reasons that I have previously stated and considered."

B. Analysis

A trial court has the discretion to either sentence a low-level felony offender to county jail or impose a " 'split sentence consisting of county jail followed by a period of mandatory supervision.' " (*People v. Camp* (2015) 233 Cal.App.4th 461, 467; see also *People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419.) In the latter scenario, the court suspends execution of the concluding portion of the offender's sentence and releases them into the community under the supervision of the probation department. (*People v.*

*Avignone* (2017) 16 Cal.App.5th 1233, 1240.) The period of supervision is "mandatory and may not be earlier terminated, except by court order." (§ 1170, subd. (h)(5)(B).)

Each of the crimes of which Jones and Larkins are convicted qualifies for such a split sentence. (§ 490.4, subd. (b)(1) [the offense is punishable by imprisonment in a county jail not exceeding one year or pursuant to subd. (h) of § 1170]; § 489 [same for § 487].) Moreover, a split sentence is the presumptive sentence "[u]nless the court finds, in the interests of justice," that such a sentence "is not appropriate in a particular case," and that a court is required to "state the reasons for [any] denial" of a split sentence "on the record." (§ 1170, subd. (h)(5)(A); rule 4.415(a), (d); see *People v. Arce* (2017) 11 Cal.App.5th 613, 618.) Rule 4.415(b) provides a list of criteria a trial court may consider when it contemplates denying a split sentence.

Larkins and Jones contend that the court failed to identify case-specific factors that overcome the statutory presumption favoring a split sentence and instead merely provided a "generic recitation" of the aggravating factors. They contend the factors in this case favor mandatory supervision and that none of the grounds for denying mandatory supervision under rule 4.415(b) apply. Neither Larkins nor Jones raised these complaints with the trial court and, consequently, has forfeited the challenge on appeal. (*People v. Scott, supra*, 9 Cal.4th at p. 353 ["defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention"].)

Addressing the merits, however, we disagree with Larkins and Jones. In determining whether to split the sentence pursuant to section 1170, subdivision (h)(5)(A) and rule 4.415 for Jones and Larkins, the court considered the seriousness and brazenness of the offense, the vulnerable people that were present, the sophistication and the planning, as well as the value of the items taken. These were appropriate factors for the court to consider in determining that a split sentence was not in the interests of justice, given that the factors set forth in rule 4.415(b) are not all-inclusive. (See rule 4.415(b) [court's determination that mandatory supervision is not appropriate "*must* be based on

24

*factors that are specific to a particular case or defendant*," and "[f]actors the court *may consider include:  [four listed factors]*" (italics added)]; see also rule 4.408(a) ["The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made"].)

Based on the foregoing and the trial court's consideration of factors specific to the case and each defendant, we cannot say that the court abused its broad discretion in determining, in the interests of justice, that a split sentence was not appropriate.  (See *People v. Camp, supra*, 233 Cal.App.4th at p. 467; *People v. Stuckey* (2009) 175 Cal.App.4th 898, 916 ["What the interests of justice require in a particular case constitutes a question uniquely addressed to the broad judicial discretion of the trial court"]; accord, *People v. Catalan* (2014) 228 Cal.App.4th 173, 179; see also § 1170, subd. (h)(5)(A).)

## DISPOSITION

The judgments are affirmed.


            /s/
            EARL, P. J.



We concur:



      /s/
RENNER, J.



      /s/
FEINBERG, J.


25